Ex A.

04-3603 (DMC)

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

Attorneys for Defendant KPMG LLP

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND and PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Derivatively on Behalf of ROYAL DUTCH PETROLEUM COMPANY and THE "SHELL" TRANSPORT AND TRADING COMPANY, P.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> PHILIP WATTS, JUDY BOYNTON, WALTER VAN DE VIJVER, FRANK COOPMAN, JEROEN VAN DER VEER, PAUL SKINNER, MAARTEN VAN DEN BERGH, ROBERT J. ROUTS, MALCOM BRINDED, MARK MOODY-STEWART, HENRY DE RUITER, LUIS GIUSTI, RONALD OXBURGH, AAD JACOBS, LAWRENCE RICCARDI, PETER BURT, MARY (NINA) HENDERSON, TEYMOUR ALIREZA, EILEEN BUTTLE, PETER JOB, JOHN KERR, WIM KOK, JOHNKHEER AARNOUT LOUDON, HUNERT MARKL, JAN TIMMER, ROBERT VAN DER VLIST, PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED, PRICEWATERHOUSECOOPERS LLP (U.S.), PRICEWATERHOUSECOOPERS LLP (U.K.), KPMG LLP, KPMG INTERNATIONAL and KPMG ACCOUNTANTS, N.V., <br><br> Defendants, <br><br> - and - <br><br> ROYAL DUTCH PETROLEUM COMPANY AND THE SHELL TRANSPORT AND TRADING COMPANY, P.L.C., <br><br> Nominal Defendants. | DOCKET NO. $04 - 3603$ (DMC) <br><br> CIVIL ACTION <br><br> **JOINDER IN REMOVAL** |

TO:  The Honorable Judges of the United States
District Court for the District of New Jersey

PLEASE TAKE NOTICE that Defendant KPMG LLP hereby joins in the

removal of this action by Defendant PricewaterhouseCoopers LLP (U.S.) from the Superior

Court of New Jersey, Law Division, Middlesex County, to the United States District Court

for the District of New Jersey.

WILLKIE FARR & GALLAGHER LLP

By: _____
Joseph T. Baio

Attorneys for Defendant
KPMG LLP

DATED:  July 27, 2004

## CERTIFICATION PURSUANT TO RULE 4:5-1

An action captioned as a shareholders' derivative complaint for breach of fiduciary duties was filed by Janet Pelguizo, successor trustee for Gladys J. Soujion Revocable Trust, derivatively on behalf of Royal Dutch Petroleum Company on June 20, 2004 in the Southern District of New York, Case No. 04-CV-04160. That action is not brought on behalf of Shell Transport and does not name any directors of Shell Transport as defendants, including defendants Watts, van de Vijver or Boynton.

I hereby certify that the matter in controversy is not the subject of any civil action pending in any Court and is likewise not the subject of any pending arbitration proceeding. I further certify that no other civil action or arbitration proceeding regarding the subject matter of this action is contemplated and I am not aware of any other parties who should be joined in this action at this juncture.

_Russell Barsue_

S:\CptDraft\Derivative\Cpt RoyalDutch_wsl.doc

## VERIFICATION

I, William S. Lerach, hereby declare as follows:

I am a member of the law firm of Lerach Coughlin Stoia & Robbins LLP, counsel for plaintiffs in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated herein are true.

I make this Verification because plaintiffs are absent from the County of San Diego where I maintain my office.

Executed this 25th day of June, 2004, at San Diego, California.

WILLIAM S. LERACH


CT System

**Service of Process Transmittal Form**

West Trenton, New Jersey



06/28/2004

Via Federal Express (2nd Day)

TO: Lorraine Killheffer
Pricewaterhouse Coopers
1177 Avenue of the Americas
Room 364
New York, NY 10036

Phone: (646) 471-1119 ex:
FAX: (646) 471-1116
EMAIL: LORRAINE.KILLHEFFER@US.PWCGLOBAL.COM

**RE:    PROCESS SERVED IN NEW JERSEY**

**FOR**       Price WaterhouseCoopers LLP Domestic State: De

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**1. TITLE OF ACTION:**          Unite National Retirement Fund, et al. Plaintiffs vs Philip Watts, et al, including, Pricewaterhousecoopers LLP, Defendants and Royal Dutch Petroleum Company, et al, Nominal Defendants

**2. DOCUMENT(S) SERVED:**     Letter dated 6/28/04, Summons, Complaint and CIS

**3. COURT:**                   Superior Court of New Jersey, Law Division, Middlesex County
Case Number None listed

**4. NATURE OF ACTION:**        Breach of Fiduciary Duty(s)

**5. ON WHOM PROCESS WAS SERVED:**   The Corporation Trust Company, West Trenton, New Jersey

**6. DATE AND HOUR OF SERVICE:**     By Process server on 06/28/2004 at 14:20

**7. APPEARANCE OR ANSWER DUE:**      35 daysd

**8. ATTORNEY(S):**       Russell S. Burnside
Greenberg Dauber Epstein & Tucker
One Gateway Center
Suite 600
Newark, NJ 07102

**9. REMARKS:**

SIGNED       CT Corporation System

PER           Margaret E. Phillips
ADDRESS      820 Bear Tavern Road
3rd Floor
West Trenton, NJ 08628
SOP WS 0006411176

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

GREENBERG DAUBER EPSTEIN & TUCKER
A Professional Corporation
One Gateway Center – Suite 600
Newark, New Jersey 07102-5311
(973) 643-3700
Attorneys for Plaintiffs

| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND, and PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Derivatively on Behalf of ROYAL DUTCH PETROLEUM COMPANY and THE "SHELL" TRANSPORT AND TRADING COMPANY, P.L.C., | SUPERIOR COURT OF NEW JERSEY MIDDLESEX COUNTY: LAW DIVISION |
| Plaintiffs, | DOCKET NO: |
| vs. | Civil Action |
| PHILIP WATTS, JUDY BOYNTON, WALTER VAN DE VIJVER, FRANK COOPMAN, JEROEN VAN DER VEER, PAUL SKINNER, MAARTEN VAN DEN BERGH, ROBERT J. ROUTS, MALCOLM BRINDED, MARK MOODY-STUART, HENNY DE RUITER, LUIS GIUSTI, RONALD OXBURGH, AAD JACOBS, LAWRENCE RICCIARDI, PETER BURT, MARY (NINA) HENDERSON, TEYMOUR ALIREZA, EILEEN BUTTLE, PETER JOB, JOHN KERR, WIM KOK JONKHEER AARNOUT LOUDON, HUBERT MARKL, JAN TIMMER, ROBBERT VAN DER VLIST, PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED, PRICEWATERHOUSECOOPERS LLP (U.S.), PRICEWATERHOUSECOOPERS LLP (U.K.), KPMG LLP, KPMG INTERNATIONAL and KPMG ACCOUNTANTS, N.V., | **SUMMONS** |
| Defendants. | |
| - and - | |
| ROYAL DUTCH PETROLEUM COMPANY and THE "SHELL" TRANSPORT AND TRADING COMPANY, P.L.C., | |
| Nominal Defendants. | |

**From the State Of New Jersey, To:**

The Plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint, attached to this Summons, states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this Summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: June 28, 2004

Donald Phelan, Clerk Of The Superior Court

Name of Defendant to be Served:       PRICEWATERHOUSECOOPERS LLP
Address of the Defendant to be Served:   c/o CORPORATION TRUST COMPANY,
                                         820 Bear Tavern Road, Trenton, NJ 08628

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section
Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St.
Camden, NJ 08103-4001
LAWYER REFERRAL
(609) 964-4520
LEGAL SERVICES
(609) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
9 N. Main St.
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts. P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(609) 692-6207
LEGAL SERVICES
(609) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
237 Hall of Records
465 Dr. Martin Luther King, Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(201) 622-6207
LEGAL SERVICES
(201) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(609) 848-4589
LEGAL SERVICES
(609) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201( 798-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad St., P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Square., P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(908) 828-0053
LEGAL SERVICES
(908) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1262
Court House, West Wing
Freehold, NJ 07728-1262
LAWYER REFERRAL
(908) 431-5544
LEGAL SERVICES
(908) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division - Hall of Records
P.O. Box 910
Morristown, NJ 07530-0910
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(908) 240-3666
LEGAL SERVICES
(908) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
LAWYER REFERRAL
(201) 278-9223
LEGAL SERVICES
(201) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(609) 678-8363
LEGAL SERVICES
(609) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(908) 475-2010

©1996 by ALL-STATE Legal
A Division of ALL-STATE International, Inc.

| FOR USE BY CLERK'S OFFICE ONLY | | | |
|---|---|---|---|
| PAYMENT TYPE : | CK | CG | CA |
| CHG / CK NO. | | | |
| AMOUNT : | | | |
| OVERPAYMENT : | | | |
| BATCH NUMBER : | | | |

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Russell S. Burnside, Esq. | ( 973 ) 643-3700 | Middlesex |

| FIRM NAME (if applicable) | DOCKET NUMBER (When available) |
|---|---|
| GREENBERG DAUBER EPSTEIN & TUCKER, P.C. | |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| One Gateway Center, Suite 600 | Complaint |
| Newark, New Jersey 07102 | JURY DEMAND  ☑ Yes ☐ No |

SUPERIOR COURT
MIDDLESEX COUNTY
RECEIVED & FILED

JUN 25 2004

GREGORY EDWARDS
DEPUTY CLERK
OF SUPERIOR COURT

| NAME OF PARTY (e.g. John Doe, Plaintiff) | CAPTION |
|---|---|
| Unite National Retirement Fund, et al. | PLEASE SEE ATTACHED CAPTION |

| CASE TYPE NUMBER (See reverse side for listing) 508 | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES ☑ NO |
|---|---|
| | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?  ☐ YES ☑ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☐ YES. ☑ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN  ☐ NONE ☑ UNKNOWN |
|---|---|

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

A.  DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☑ YES ☐ NO

IF YES, IS THAT RELATIONSHIP   ☐ EMPLOYER - EMPLOYEE   ☐ FRIEND / NEIGHBOR   ☐ OTHER (explain)
☐ FAMILIAL   ☑ BUSINESS

B.  DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES ☑ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES ☑ NO   IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

WILL AN INTERPRETER BE NEEDED?  ☐ YES ☑ NO   IF YES, FOR WHAT LANGUAGE:

ATTORNEY SIGNATURE
*Russell C. Burnside*

**SIDE 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

---

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track 1 — 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY |
| 502 | BOOK ACCOUNT |
| 503 | COMMERCIAL TRANSACTION |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 599 | CONTRACT |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |

**Track II — 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 602 | ASSAULT AND BATTERY |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT - OTHER |

**Track III — 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL COVERAGE LITIGATION |
| 234 | FRT PLYWOOD LITIGATION |
| 245 | ACTIONS UNDER FEDERAL Y2K ACT |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 613 | REPETITIVE STRESS SYNDROME |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRIT |

**Mass Tort (Track IV)**
| | | | | |
|---|---|---|---|---|
| 240 | DIET DRUG | | 601 | ASBESTOS |
| 241 | TOBACCO | | 612 | BLOOD-CLOTTING SERUM |
| 243 | LATEX | | 702 | LEAD PAINT |
| 246 | REZULIN | | | |
| 247 | PROPULSID | | | |
| 248 | CIBA GEIGY | | | |
| 264 | PPA | | | |

999 OTHER (Briefly describe nature of action) _____

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics."


CT System

Service of Process Transmittal Form
West Trenton, New Jersey

07/13/2004

Via Federal Express (2nd Day)

TO: Lorraine Killheffer
    Pricewaterhouse Coopers
    1177 Avenue of the Americas
    Room 364
    New York, NY 10036

**RE:   PROCESS SERVED IN NEW JERSEY**

FOR        Price WaterhouseCoopers LLP Domestic State: De

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| 1. TITLE OF ACTION: | Unite National Retirement Fund, et al, Plaintiffs vs Philip Watts, et al, including, Pricewaterhousecoopers LLP, Defendants and Royal Dutch Petroleum Company, et al, Nominal Defendants |
| 2. DOCUMENT(S) SERVED: | Letter dated 7/9/04 and copy of Track Assignment Notice, CIS and first page of Complaint |
| 3. COURT: | Superior Court of New Jersey, Law Division, Middlesex County Case Number MID-L-4738-04 |
| 4. NATURE OF ACTION: | Breach of Fiduciary Duty(s) |
| 5. ON WHOM PROCESS WAS SERVED: | The Corporation Trust Company, West Trenton, New Jersey |
| 6. DATE AND HOUR OF SERVICE: | By Process server on 06/28/2004 at 14:45 |
| 7. APPEARANCE OR ANSWER DUE: | None listed |
| 8. ATTORNEY(S): | Sumeeta A. Gawande Greenberg Dauber Epstein & Tucker One Gateway Center Suite 600 Newark, NJ 07102 |

9. REMARKS:

SIGNED      CT Corporation System

PER          Margaret E. Phillips
ADDRESS     820 Bear Tavern Road
            3rd Floor
            West Trenton, NJ 08628
            SOP WS 0006447941

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

# GREENBERG DAUBER EPSTEIN & TUCKER
### A PROFESSIONAL CORPORATION
### COUNSELLORS AT LAW
### SUITE 600
### ONE GATEWAY CENTER
### NEWARK, N.J. 07102-5311

(973) 643-3700
FACSIMILE (973) 643-1218

sgawande@greenbergdauber.com

SUMEETA A. GAWANDE

July 9, 2004

**VIA HAND DELIVERY BY GUARANTEED**

CORPORATION TRUST COMPANY
820 Bear Tavern Road
Trenton, NJ 08628

     Re:   *UNITE National Retirement Fund, et al. v. Philip Watts, et. al.*
           Docket No. MID-L-4739-04

Dear Sir/Madam:

    This firm represents plaintiffs in the above-referenced matter. We understand that you are the registered agent for PRICEWATERHOUSECOOPERS LLP. On June 28, 2004, we served you with a Summons, Complaint and Civil Case Information Statement. Enclosed please a copy of the Track Assignment Notice issued by the Clerk of the Court and a duplicate copy of the Civil Case Information Statement and the first page of the Complaint stamped filed by the Court.

                   Very truly yours,

                   Sumeeta A. Gawande

SAG/mn
Encl.

PAGE   3/7

MIDDLESEX COUNTY SUPERIOR COURT
P O BOX 2633
1 JFK SQUARE
NEW BRUNSWICK      NJ 08903

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (732) 981-3301
COURT HOURS

DATE:   JUNE 29, 2004
RE:     UNITE NATL RETIREMENT FUND VS WATTS PHILIP
DOCKET: MID L -004739 04

THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:   HON AMY P. CHAMBERS

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (732) 981-3306

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                   ATT: RUSSELL S. BURNSIDE
                                   GREENBERG DAUBER EPSTEIN & T
                                   GREENBERG DAUBER EPSTEIN TUCKER
                                   ONE GATEWAY CENTER SUITE 600
                                   NEWARK            NJ 07102-5311

JUTSHE

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division - Civil Part pleadings (not motions) under Rule 4:5-1.

**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| | |
|---|---|
| PAYMENT TYPE: CK .CG CA | |
| CHG / CK NO. | |
| AMOUNT : | |
| OVERPAYMENT: | |
| BATCH NUMBER : | |

| | |
|---|---|
| ATTORNEY / PRO SE NAME<br>Russell S. Burnside, Esq. | TELEPHONE NUMBER<br>( 973 ) 643-3700 |

| COUNTY OF VENUE |
|---|
| Middlesex |

| FIRM NAME (if applicable) |
|---|
| GREENBERG DAUBER EPSTEIN & TUCKER, P.C. |

DOCKET NUMBER (When available)
MID L-4739-04

| OFFICE ADDRESS |
|---|
| One Gateway Center, Suite 600 |
| Newark, New Jersey 07102 |

DOCUMENT TYPE
Complaint

JURY DEMAND
☑ YES   ☐ NO

| NAME OF PARTY (e.g. John Doe, Plaintiff)<br>Unite National Retirement Fund, et al. | CAPTION<br>PLEASE SEE ATTACHED CAPTION |
|---|---|

SUPERIOR COURT
MIDDLESEX COUNTY
RECEIVED & FILED

**JUN 25 2004**

GREGORY EDWARDS
DEPUTY CLERK
OF SUPERIOR COURT

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>508 | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☑ NO<br>IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|

| RELATED CASES PENDING?  ☐ YES  ☑ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?  ☐ YES  ☑ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>☐ NONE  ☑ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| A.  DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?  ☑ YES  ☐ NO | IF YES, IS THAT RELATIONSHIP? | ☐ EMPLOYER-EMPLOYEE  ☐ FRIEND / NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☑ BUSINESS |
|---|---|---|

B.  DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☑ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?  ☐ YES  ☑ NO     IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

WILL AN INTERPRETER BE NEEDED?  ☐ YES  ☑ NO     IF YES, FOR WHAT LANGUAGE:

ATTORNEY SIGNATURE
*Russell S. Burnside*

GREENBERG DAUBER EPSTEIN & TUCKER
MELVIN GREENBERG
RUSSELL S. BURNSIDE
One Gateway Center, Suite 600
Newark, New Jersey 07102
Telephone: 973/643-3700
973-643-1218   (fax)

LERACH COUGHLIN STOIA
& ROBBINS LLP
WILLIAM S. LERACH
ARTHUR C. LEAHY
PATRICK W. DANIELS
MARY K. BLASY
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:      619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

SUPERIOR COURT
MIDDLESEX COUNTY
RECEIVED & FILED

JUL   5 2004

GREGORY EDWARDS
DEPUTY CLERK
OF SUPERIOR COURT

| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND, and PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Derivatively on Behalf of ROYAL DUTCH PETROLEUM COMPANY and THE "SHELL" TRANSPORT AND TRADING COMPANY, P.L.C., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY DOCKET NO. *MID* L- 4739 04 |
| Plaintiffs, | |
| vs. | |
| PHILIP WATTS, JUDY BOYNTON, WALTER VAN DE VIJVER, FRANK COOPMAN, JEROEN VAN DER VEER, PAUL SKINNER, MAARTEN VAN DEN BERGH, ROBERTJ. ROUTS, MALCOLM BRINDED, MARK MOODY-STUART, HENNY DE RUITER, LUIS GIUSTI, RONALD OXBURGH, AAD JACOBS, LAWRENCE RICCIARDI, PETER BURT, MARY (NINA) HENDERSON, TEYMOUR ALIREZA, EILEEN BUTTLE, PETER JOB, JOHN KERR, WIM KOK, | |

[Caption continued on following page.]

JONKHEER AARNOUT LOUDON, HUBERT     :
MARKL, JAN TIMMER, ROBBERT VAN      :
DER VLIST, PRICEWATERHOUSECOOPERS   :
INTERNATIONAL LIMITED,              :
PRICEWATERHOUSECOOPERS LLP          :
(U.S.), PRICEWATERHOUSECOOPERS      :
LLP (U.K.), KPMG LLP, KPMG          :
INTERNATIONAL and KPMG              :
ACCOUNTANTS, N.V.,                  :

        Defendants.           :

    - and -                             :

ROYAL DUTCH PETROLEUM COMPANY       :
and THE "SHELL" TRANSPORT AND       :
TRADING COMPANY, P.L.C.,            :

        Nominal Defendants.   :
_____x

This writing/publication is a creative work fully protected by all applicable copyright laws, as well as by misappropriation, trade secret, unfair competition and other applicable laws. The authors of this work have added value to the underlying factual materials herein through one or more of the following: unique and original selection, coordination, expression, arrangement, and classification of the information.

No copyright is claimed in the text of statutes, regulations, and any excerpts from analysts' reports or news articles quoted within this work.

Copyright© 2004 by William S. Lerach and Lerach Coughlin Stoia & Robbins LLP. William S. Lerach and Lerach Coughlin Stoia & Robbins LLP will vigorously defend all of their rights to this writing/publicatio-.

All rights reserved - including the right to reproduce in whole or in part in any form. Any reproduction in any form by anyone of the material contained herein without the permission of William S. Lerach and Lerach Coughlin Stoia & Robbins LLP is prohibited.

** 80.'39Ad TBIDI ** FROM:GREENBERGDAUBEREPSTEIN        ID:8432700        PAGE   7/7

GREENBERG DAUBER EPSTEIN
   & TUCKER
MELVIN GREENBERG
RUSSELL S. BURNSIDE
One Gateway Center, Suite 600
Newark, New Jersey 07102
Telephone:  973/643-3700
973-643-1218 (fax)

LERACH COUGHLIN STOIA
  & ROBBINS LLP
WILLIAM S. LERACH
ARTHUR C. LEAHY
PATRICK W. DANIELS
MARY K. BLASY
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs



| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND and PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Derivatively on Behalf of ROYAL DUTCH PETROLEUM COMPANY and THE "SHELL" TRANSPORT AND TRADING COMPANY, P.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> PHILIP WATTS, JUDY BOYNTON, WALTER VAN DE VIJVER, FRANK COOPMAN, JEROEN VAN DER VEER, PAUL SKINNER, MAARTEN VAN DEN BERGE, ROBERT J. ROUTS, MALCOLM | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY <br><br> DOCKET NO. MIDL-4739-04 <br><br> VERIFIED SHAREHOLDERS' DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, UNJUST ENRICHMENT AND CONSTRUCTIVE FRAUD SEEKING EQUITABLE RELIEF AND DAMAGES <br><br> DEMAND FOR JURY TRIAL |

[Caption continued on following page.]

GREENBERG DAUBER EPSTEIN
    & TUCKER
MELVIN GREENBERG
RUSSELL S. BURNSIDE
One Gateway Center, Suite 600
Newark, New Jersey 07102
Telephone:  973/643-3700
973-643-1218 (fax)

LERACH COUGHLIN STOIA
  & ROBBINS LLP
WILLIAM S. LERACH
ARTHUR C. LEAHY
PATRICK W. DANIELS
MARY K. BLASY
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs



| | |
|---|---|
| ——————————————— x | |
| UNITE NATIONAL RETIREMENT FUND and PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Derivatively on Behalf of ROYAL DUTCH PETROLEUM COMPANY and THE "SHELL" TRANSPORT AND TRADING COMPANY, P.L.C., | : : : : : : : |
| Plaintiffs, | : |
| vs. | : |
| PHILIP WATTS, JUDY BOYNTON, WALTER VAN DE VIJVER, FRANK COOPMAN, JEROEN VAN DER VEER, PAUL SKINNER, MAARTEN VAN DEN BERGH, ROBERT J. ROUTS, MALCOLM | : : : : : |
| ——————————————— | : |

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY

DOCKET NO. *MIDL-4739-04*

VERIFIED SHAREHOLDERS' DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, UNJUST ENRICHMENT AND CONSTRUCTIVE FRAUD SEEKING EQUITABLE RELIEF AND DAMAGES

DEMAND FOR JURY TRIAL

[Caption continued on following page.]

BRINDED, MARK MOODY-STUART,          :
HENNY DE RUITER, LUIS GIUSTI,        :
RONALD OXBURGH, AAD JACOBS,          :
LAWRENCE RICCIARDI, PETER BURT,      :
MARY (NINA) HENDERSON, TEYMOUR       :
ALIREZA, EILEEN BUTTLE, PETER        :
JOB, JOHN KERR, WIM KOK,             :
JONKHEER AARNOUT LOUDON, HUBERT      :
MARKL, JAN TIMMER, ROBBERT VAN       :
DER VLIST,                           :
PRICEWATERHOUSECOOPERS               :
INTERNATIONAL LIMITED,               :
PRICEWATERHOUSECOOPERS LLP           :
(U.S.), PRICEWATERHOUSECOOPERS       :
LLP (U.K.), KPMG LLP, KPMG           :
INTERNATIONAL and KPMG               :
ACCOUNTANTS, N.V.,                   :
                                     :
                    Defendants.      :
         — and —                     :
                                     :
ROYAL DUTCH PETROLEUM COMPANY        :
and THE "SHELL" TRANSPORT AND        :
TRADING COMPANY, P.L.C.,             :
                                     :
              Nominal Defendants.    :
                                     :
_____      :
                                     x

This writing/publication is a creative work fully protected by all applicable copyright laws, as well as by misappropriation, trade secret, unfair competition and other applicable laws. The authors of this work have added value to the underlying factual materials herein through one or more of the following: unique and original selection, coordination, expression, arrangement, and classification of the information.

No copyright is claimed in the text of statutes, regulations, and any excerpts from analysts' reports or news articles quoted within this work.

Copyright© 2004 by William S. Lerach and Lerach Coughlin Stoia & Robbins LLP. William S. Lerach and Lerach Coughlin Stoia & Robbins LLP will vigorously defend all of their rights to this writing/publication.

All rights reserved — including the right to reproduce in whole or in part in any form. Any reproduction in any form by anyone of the material contained herein without the permission of William S. Lerach and Lerach Coughlin Stoia & Robbins LLP is prohibited

## INTRODUCTION AND SUMMARY OF THE ACTION

1.    This is a shareholders' derivative action on behalf of Royal Dutch Petroleum Company ("Royal Dutch") and The "Shell" Transport and Trading Company, p.l.c. ("Shell Transport") (collectively, along with their operating subsidiaries, the "Shell Group") against the Royal Dutch and Shell Transport Boards of Directors, several of the Shell Group's current and past top executives, and the Shell Group's public accounting firms, PricewaterhouseCoopers ("PWC") and KPMG ("KPMG").   This action seeks to remedy intentional or reckless breaches of fiduciary duty, abuse of control, fraud, unjust enrichment and gross mismanagement and, in the case of the accounting firms, aiding and abetting the foregoing misconduct as well as their own negligence.  The claims arise from defendants causing or permitting Royal Dutch, Shell Transport and the Shell Group to falsify their proved oil and gas reserves *by billions of barrels of oil equivalent ("boe") for several years, overstate their future cash flows by over $100 billion and falsify their respective financial statements.*  The fraud unraveled in early 2004, when the Shell Group suddenly revealed the elimination of almost 4.5 billion barrels of proved reserves – over 22% of the Shell Group's previously claimed proved reserves – and restated its 2002-2003 financial statements, eliminating hundreds of millions of dollars of previously reported net income.  This resulted in a sharp decline in Shell Transport's and Royal Dutch's stock and American Depository Receipt ("ADR")

prices, produced a firestorm of criticism from Shell Transport and Royal Dutch shareholders and the investment community condemning the Shell Group's apparent deceit over the past several years, and the ouster of several of the Shell Group's top executives. This fiasco has damaged both Shell Transport and Royal Dutch by exposing them to massive civil and criminal investigations, billions of dollars in liability for violations of the U.S. securities laws and international law via class action suits and by impairing their corporate credit ratings, reputation and goodwill. Former SEC chief accountant Lynn Turner, quoted in a January 12, 2004 *Wall Street Journal* article titled "Shell Cuts Reserve Estimate 20% as SEC Scrutinizes Oil Industry," said the revision looked like more than a mistake: *"'A 20% restatement of proven reserves is a humongous error,'"* he said. *"'For a company like Shell to have missed its proven reserves by that much is not an oversight. It's an intentional misapplication of the SEC's rules.'"* The U.S. Department of Justice and Security and Exchange Commission have opened active criminal and civil investigations. In short, this has been the *"worst scandal in the Companies' 100-year history."*

2.    Shell's officers and directors have admitted the essential allegations of this Complaint. According to the Royal Dutch/Shell Transport 2003 Annual Report issued in May 2004, the Chairman of Shell Group stated:

> All shareholders will know of the exceptional circumstances that have delayed the publication of this report. The Group's performance in 2003 will clearly be

seen in the context of the restatement of reserves (a reduction of 4.47 billion barrels or some 23% from the previously reported end-2002 figures), and the subsequent related management changes of early 2004. ***These events have understandably caused considerable concern to shareholders* ....**

... [T]he Group Audit Committee commissioned a rigorous external review of the events and background to these issues and we are implementing its recommendations. They include ensuring strict compliance with the rules and guidance of the Securities and Exchange Commission; a range of measures to strengthen our business controls; ensuring that the Committee of Managing Directors and the Group Audit Committee take a formal role in reviewing the booking of reserves; and the systematic use of external reserves expertise to provide challenge and assurance at critical points in the reserves booking and reporting process.

*     *     *

I recognize that the events around the reserves restatement have prompted a wider debate about both the structure and governance of the Group.... ***Action is also being taken to ensure compliance as a foreign private issuer with the Sarbanes-Oxley Act and new corporate governance requirements of the New York Stock Exchange in the USA* ....**

3.   Elsewhere, the 2003 Shell Group Annual Report stated:

***Deficiencies relating to reserves reporting***

In connection with the restatement of proved reserves volumes ... ***Royal Dutch and Shell Transport have determined ... that there were deficiencies and material weaknesses in the internal controls relating to proved reserves bookings and disclosure controls that allowed volumes of oil and gas to be improperly booked and maintained as proved reserves.*** The inappropriate booking of certain proved reserves had an effect on the Financial Statements, mainly understating depreciation, depletion and amorisation.... [Royal Dutch and Shell Transport thus] restate the Financial Statements for the years covered by the 2002 Annual Report on Form 20-F. ***The identified deficiencies and material weaknesses relating to the booking of proved reserves consist of the following:***

- 3 -

- the Group's guidelines for booking proved reserves were inadequate in several respects, including (i) containing inconsistencies with the SEC's rules and published guidance relating to proved reserves and (ii) failing to clearly and sufficiently impart these requirements and guidance to users of the guidelines;

- there was a lack of appropriate resources and a confusion of roles and responsibilities with respect to the Group Reserves Co-ordinator and the Group Reserves Auditor;

- the Group's Committee of Managing Directors and the Parent Company Boards were not provided with appropriate information to form disclosure judgments;

- there were weaknesses in the finance function as the Chief Financial Officers of the businesses did not have direct reporting responsibility to the Group Chief Financial Officer;

- there were unclear lines of responsibility for booking proved reserves;

- there was a lack of understanding at various levels of the Group of the meaning and importance of disclosure obligations under the SEC's rules and published guidance relating to proved reserves; and

- there was a control environment that did not emphasise the paramount importance of the compliance element of proved reserves decisions.

4.    The Shell Group is involved in the discovery, refining, transportation and sale of petroleum products, competing with such giants as Exxon/Mobil, Chevron/Texaco, British Petroleum, Conoco/Phillips and Total S.A.  A key measure of the Shell Group's success is the status of its oil and gas production and proved oil and gas reserves and the projected future cash flows from those reserves.  Proved reserves are those reserves which have been discovered, quantified and are of sufficient certainty of

- 4 -

profitable commercial development that they may be properly categorized as "proved." Analysts and investors focus on the level of proved oil and gas reserves of energy companies, as they are the "lifeblood" of any energy company – not only a key indicator of management's historic exploration success, but of the enterprise's future economic performance as well. As *The Wall Street Journal* has put it: "***When investors decide to put money into an energy producer, one of the first questions they ask is how much oil and gas does the company have in the ground***?"

5.   Because a portion of an energy company's proved reserves is consumed each year in current production, such companies must constantly discover and categorize as "proved" sufficient quantities of oil and gas reserves to at least make up for the current year's production draw-down – the critical "reserve replacement ratio." Due to the importance of proved reserves and the "reserve replacement ratio" to the success of oil and gas companies like the Shell Group, the compensation of its executive managers was, in significant part, dependent upon the Shell Group achieving success in the proved reserve category and its successful performance in that regard *compared to its competitors*.

6.   Because the stocks (and/or ADRs) of Shell Transport and Royal Dutch trade in the United States and are listed on the New York Stock Exchange ("NYSE"), the companies are subject to our nation's securities laws and the jurisdiction of our Securities and Exchange Commission ("SEC"). The SEC has established criteria for

allowing oil and gas reserves to be categorized in the prized "proved" category, which are binding on the Shell Group.  In order to be properly categorized in the proved category, oil and gas reserves must be located, tested, quantified and capable of being harvested and sold in the marketplace at a profit under current operating and economic conditions, *i.e.*, such reserves must be currently commercially viable.  Via the Sarbanes-Oxley Act of 2002, the U.S. Congress mandated that companies, even foreign companies like Shell Transport and Royal Dutch, that are subject to SEC regulation take enhanced action to increase and then maintain the increased effectiveness of their internal disclosure, financial and accounting controls to prevent misstated financial information and other fraudulent conduct.  These requirements are **unique in all the world** and were intended to improve corporate governance to decrease the possibility of directorial or management misconduct, thus increasing management accountability and safeguarding corporate assets and shareholder value.

7.    The Shell Group is comprised of 150± operating companies owned 60% by Royal Dutch and 40% by Shell Transport.  The directors of Royal Dutch and Shell Transport appoint the Committee of Managing Directors, *i.e.*, top executives, of the Shell Group.  The management of the operating companies is overseen and controlled by the Royal Dutch and Shell Transport Boards.  During 1998-2003, the Shell Group was managed by the Group Managing Directors, otherwise

known as the Committee of Managing Directors (the "CMD"), which
included:

### The Shell Group Managing Directors

| | |
|---|---|
| Philip Watts, Chairman | 1998 – 2003 |
| Judy Boynton | 2003 |
| Walter van de Vijver | 2001 – 2003 |
| Jeroen van der Veer, Vice-Chair | 1998 – 2003 |
| Maarten van den Bergh | 1998 – 2000 |
| Paul Skinner | 2000 – 2003 |
| Rob Routs | 2003 |
| Mark Moody-Stuart | 1998 – 2001 |
| Malcolm Brinded | 2002 – 2003 |

8.    At the outset of 1990s, the Shell Group was the largest
integrated energy company in the world, with billions and billions
of barrels of proved oil and gas reserves which covered years and
years of projected future production needs and were forecasted to
provide hundreds of billions of dollars of future cash flows.   In
the mid-1990s, the Shell Transport and Royal Dutch Boards approved
massive   cost   cuts   in   an   attempt   to   improve   short-term
profitability,   which   included   dramatic   cutbacks   in   exploration
expenditures.   However, by the late 1990s, due to the cutback on
the Shell Group's exploratory drilling activities, the Shell Group
began to encounter serious difficulties in replenishing its proved
oil and gas reserves by new discoveries but was continuing to show
adequate replenishment of such reserves.   In fact, by 1997-1998,
the Shell Group was encountering a crisis from its failure to
discover and qualify sufficient amounts of commercially viable oil
and gas in the ground.   One internal memo noted: "*Our reserves
replacement performance over the past few years clearly illustrates*

- 7 -

*the emerging problems with our resource base and is becoming a source of competitive disadvantage."*

9.   The Shell Group's top executives and the directors of Shell Transport and Royal Dutch all recognized that this failure had grown into such a problem that, if this became known to the shareholders of Shell Transport and Royal Dutch or the investment community, it would expose their managerial and oversight failures, result in a diminished financial condition of the companies by eliminating billions of barrels of proved reserves and the future cash flows based on them, require a restatement of their financial statements, hurt the performance of Shell Transport's and Royal Dutch's stocks and ADRs and result in intense pressure from the investment community and Shell Transport and Royal Dutch shareholders for changes - including replacement of the top managers of the Shell Group and the Boards of both companies.  In short, disclosure of the true extent of the growing oil and gas reserve replacement problem and the steps being taken to conceal it would have been a disaster for the directors and officers of these two companies.  The Shell Group executives were *"caught in a box."* So, the true facts were not disclosed.  In fact, the true facts were concealed via repeated misrepresentations to Shell Transport and Royal Dutch shareholders.

10.   An internal presentation in June 2000 warned the Shell Group's top executives that because of prior over-booking of proved reserves, Shell Transport and Royal Dutch risked disappointing

financial markets with their overly optimistic projections about oil projects.  The presentation warned that the Shell Group would be unable to meet its growth targets for oil and gas production. Under the heading *The Bad News,*" the presentation warned that executives "*run the risk of initiating an over-promise, under-delivery cycle.*"  One page of the presentation, titled "*Exploration:  Overstated Delivery?,*" warned that internal estimates for oil production at a number of projects were "*very optimistic and unrelated to historical performances.*"  The presentation went on to cite a number of new projects with "*possibly overstated value promises.*"  Yet, during 1999-2003, the Shell Group was publicly portraying the exploration and production part of its business as successful and poised for continued growth.

11.  In April 1999, the Shell Group's top executives made a presentation to large Shell Transport and Royal Dutch shareholders and other institutional investors regarding the Shell Group's Exploration & Production ("E&P") business unit.  Set forth below are two of the slides they presented:





12. During 1998-2003, the Individual Defendants caused the Shell Group to repeatedly assure Shell Transport and Royal Dutch shareholders that the Shell Group was succeeding in identifying new proved oil and gas reserves and successfully replacing the existing reserves used up in production. Set forth below are the representations made each year by Shell Transport and Royal Dutch to their shareholders in their joint Annual Report on Form 20-F filed with the SEC each year in the U.S.:

**1998**

**Reserves**

During 1998 the Group's total proved reserves for oil (including natural gas liquids) and natural gas increased from 19.4 to 20.5 billion barrels of oil equivalent.... The net additions to proved reserves more than replaced the 1998 production, with replacement ratios of some 140% for oil (compared with 130% in 1997) and some 250% for gas (compared with 210% in 1997).

**1999**

**Reserves**

The overall 1999 replacement ratio of proved crude oil and natural gas reserves and oil sands stands at 101% (147% excluding 1999 divestments and acquisitions)....

The three-year rolling average replacement ratio for total crude oil and natural gas proved reserves ... stands at 132%, reflecting the fact that oil and gas production over 1997-99 has been more than replaced by net additions over the same period.

**2000**

**Reserves**

The proved hydrocarbon reserves replacement ratio for 2000 was 105% .... Therefore production during the year of 1.4 billion barrels of oil equivalent was more than replaced....

The three-year rolling average proved hydrocarbon reserves replacement ratio ... stands at 117%.

**2001**

**Reserves**

The proved hydrocarbon reserves replacement ratio for 2001 is 74%.... [A]nd the three-year rolling average ... now stands at 101%. Proved reserves are equivalent to more than 14 years of current production.

**2002**

**Reserves**

The proved hydrocarbon reserves replacement ratio for 2002 was 117% and the five year rolling average ... now stands at 109%.... Proved reserves are equivalent to more than 13 years of current production.

13. In December 1999, the Shell Group's top executives made a presentation to an Investors Relation Conference that included a large number of Shell Transport and Royal Dutch shareholders. Set forth below are two of the slides they presented:

- 11 -





14.   In a December 2000 slideshow for investors presented by Philip Watts, the Shell Group said its exploration and production business was "*delivering on promises*," including a commitment to boost annual oil and natural gas output by 5% between 2000-2005.

15.   In September 2001, the Shell Group's top executives made a presentation to securities analysts about its E&P businesses.  One of the slides used is set forth below:

- 12 -



16. On February 6, 2003, in London, and on February 7, 2003, in New York, Watts, van der Veer, Skinner, van de Vijver, Brinded and Boynton made a presentation to investors, including Shell Transport and Royal Dutch shareholders, concerning the 4th Q2002 and 2002 results of Shell Transport, Royal Dutch and the Shell Group. The presentation included the following:

*Royal Dutch/Shell Group of Companies*

| Business priorities Exploration and Production | *Delivered in 2002* | | ◈ |
|---|---|---|---|
| | ROACE of 28% | • 14% at reference conditions | |
| | Underlying unit operating costs | • Reduced in line with target of 3% | |
| | Enterprise Oil | • Acquisition, integration and $47 mln of synergies | |
| | Portfolio | • Upgrading continued – Draugen and Pinedale acquisitions, divestments – Maui | |
| | Production @ $16 / bbl | • 3% ahead of target of 3,800 kboe/d (excl. Enterprise Oil) | |
| | Reserves Replacement Ratio | • 117% incl. A&D, 50% excl. A&D | |
| | Exploration | • Significant discoveries - GoM, Brazil, Kazakhstan, Nigeria • New licenses - GoM, Norway, Brazil | |

*Royal Dutch / Shell Group of Companies  35*

In line with our strategic direction, the Exploration and Production business is delivering robust profitability today, while investing in tomorrow's projects.

We are delivering on returns and operating costs while maintaining production growth.

We continue to upgrade our portfolio and to create/develop legacy projects to grow value into the future.

2002 was a year of all round delivery.

Including portfolio changes we replaced 117% of our reserves ... 50% organically.

And we had continued exploration success ... with significant discoveries in several core areas.



*Royal Dutch/Shell Group of Companies*

**Business priorities**

Exploration and production

**Total reserves base**
Reserves remaining at year-end

Billion boe

Steady growth, more than replacing production

*Probable reserves*

*Proved reserves*

1995 1996 1997 1998 1999 2000 2001 2002

| 2002 Proved reserves only | Oil/NGL | Gas | Total |
|---|---|---|---|
| Organic | 85% | -1% | 50% |
| A&D | 92% | 31% | 67% |
| Total 2002 RRR | 177% | 30% | 117% |

¹ SEC: "Indicated Additional Reserves"

*Royal Dutch / Shell Group of Companies  44*

We expect to continue growing our reserves base.

In 2002 we had a one-year reserves replacement of 117%, including Enterprise ... 50% on an organic basis.

Proved organic oil replacement was 108%, continuing our consistent ability to replace oil production.

We made no net organic addition to gas reserves, which tend to come in large infrequent lumps with new licences and project approvals. Our gas reserves life of 15.5 years remains one of the highest in the industry and we expect to make substantial additions in coming years.

In the US ... one of our core areas ... we replaced 136% of production organically.

We evaluate over a **long-term period** ... typically on a **5-year basis** in line with our exploration and development cycle ... and plan our business on both proved and probable reserves.

On a 5-year average up to the end of 2002 our proved **replacement ratio** was 109% ... including probable reserves it was 144%.

17.   Thus, during 1998-2003, the Individual Defendants caused or permitted Shell Transport and Royal Dutch to make false and misleading representations to their shareholders and the investment community as to the state of their proved oil and gas reserves, *ultimately overstating them by over four billion barrels – over 22% – representing over $100 billion in future cash flows*!  They thus falsified the Shell Group's business success, financial condition, current earnings and future cash flows – inflating the trading prices of stocks and ADRs of Shell Transport and Royal Dutch, allowing them to hold onto their own positions of power, prestige and profit at the companies – pocketing millions of dollars in salaries and bonuses and the other valuable emoluments of their offices.

18.   The growth in "proved" reserves reported by the Shell Group due to defendants' fraudulent misconduct are set forth below:

| | Proved Crude Oil & Natural Gas Liquids Reserves (billions of barrels) | Proved Natural Gas Reserves (billions of boe[1]) | Total Proved Reserves (billions of boe) | Number of Years of Current Production Reflected in Proved Reserves | Future Cash Inflows (billions of dollars) |
|---|---|---|---|---|---|
| 1997 | 9.681 | 9.678 | 19.359 | 14.5 | $249.320 |
| 1998 | 10.031 | 10.456 | 20.487 | 15.3 | $184.345 |
| 1999 | 9.775 | 10.093 | 19.868 | 14.9 | $271.627 |
| 2000 | 9.751 | 9.704 | 19.455 | 14.4 | $295.729 |
| 2001 | 9.469 | 9.626 | 19.095 | 13.9 | $234.175 |
| 2002 | 10.133 | 9.213 | 19.346 | 13.3 | $329.034 |

19. PWC and KPMG, respectively, issued unqualified audit reports on Shell Transport's and Royal Dutch's 1998-2002 financial statements, respectively. PWC and KPMG also jointly issued unqualified audit reports on the Shell Group's 1998-2002 financial statements. Each of these opinions represented that:

- The audits had been conducted in accordance with U.S. generally accepted auditing standards ("GAAS") and provided a reasonable basis for the accountants' opinions.

- Those financial statements presented fairly the financial position of the Shell Group, Shell Transport and Royal Dutch as of December 31, 1998-2002 and the results of their operations and their cash flows for each of those years in accordance with generally accepted accounting principles ("GAAP") in the Netherlands and the United States.

20. All during 1998-2003, the internal situation with respect to the Shell Group's proved oil and gas reserves consistently worsened. The discrepancy between the publicly represented proved

---

[1]    Natural gas reserves are converted to boe based on the ratio of 5,800 standard cubic feet of gas equals 1 boe.

reserves and the actual proved reserves increased every year.  And the pressure on the directors and managers of these companies to continue to conceal their falsification of these reserves and the true situation known to them from their access to secret corporate information – and its variance from the Shell Group's public representations – increased with each passing quarter.

21.  After a huge wave of revelations of financial scandals of immense proportions engulfed the U.S. securities markets in 2000-2001 (i.e., WorldCom, Enron, Qwest, Tyco, Dynegy, Global Crossing, AOL and others), in 2002, a reinvigorated SEC privately notified the Shell Group and other oil companies that it was conducting an inquiry into the treatment of certain of their oil reserves as proved.  This indication of increased regulatory scrutiny into proved reserves by the SEC, coupled with the SEC's increased investigatory and enforcement activity generally regarding public company financial fraud in 2001-2002, caused enormous concern inside the Shell Group.  The massive, multi-year falsification of the Shell Group's proved oil and gas reserves and financial statements was now in real danger of being discovered.

22.  The top executives of the Shell Group feuded bitterly over how to conceal the evidence that the Shell Group had greatly exaggerated its proved oil and natural gas reserves.  E-mails and private notes exchanged between executives at the very top echelons of the Shell Group show they were aware of these serious reserve-accounting abuses for years.  In February 2002, van de Vijver, the

- 18 -

Chief of E&P, forwarded a memo to a one of the Shell Group's top management committees detailing potential reserve overbookings of 2.3 million barrels of oil.  In a personal *"Note to File"* marked *"strictly confidential,"* dated September 2002, van de Vijver again admitted *"that both reserves replacement and production growth were inflated."*  A limited internal investigation ordered by the Shell Transport and Royal Dutch Boards into the Shell Group after the first of the  2004 revelations about the overstated proved reserves blamed Watts and van de Vijver – stating they *"were alert to the difference between the information concerning reserves that had been transmitted to the public ... and the information known to some members of management."*

23.  In July 2002, another presentation was made to the management committee that further detailed non-compliance with SEC rules regarding reserves booking, but no action was taken.  The July report was an attempt to *"play for time"* in hopes that some development would *"justify, or mitigate, the existing reserve exposures,"* the internal investigation concluded.

24.  On September 2, 2002, in a note to the same committee – with a copy to CFO Boynton – van de Vijver described "dilemmas" facing E&P: "Given the external visibility of our issues ... the market can only be '*fooled*' if 1) credibility of the company is high; 2) medium and long-term portfolio refreshment is real and/or 3) positive trends can be shown on key indicators."  The memo continued:  *"We are struggling on all key criteria."*  Van de Vijver