# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

UNITE NATIONAL RETIREMENT FUND and
PLUMBERS AND PIPEFITTERS NATIONAL
PENSION FUND, Derivatively on Behalf of ROYAL
DUTCH PETROLEUM COMPANY and THE
"SHELL" TRANSPORT AND TRADING
COMPANY, PLC,

        Plaintiffs,

v.

PHILIP WATTS, JUDY BOYNTON, WALTER
VAN DE VIJVER, FRANK COOPMAN, JEROEN
VAN DER VEER, PAUL SKINNER, MARTEN VAN
DER BERGH, ROBERT J. ROUTS, MALCOLM
BRINDED, MARK MOODY-STUART, HENNY DE
RUITER, LUIS GIUSTI, RONALD OXBURGH,
AAD JACOBS, LAWRENCE RICCIARDI, PETER
BURT, MARY (NINA) HENDERSON, TEYMOUR
ALIREZA, EILEEN BUTTLE, PETER JOB, JOHN
KERR, WIM KOK, JONKHEER AARNOUT
LOUDON, HUBERT MARKL, JAN TIMMER,
ROBBERT VAN DER LIST,
PRICEWATERHOUSECOOPERS
INTERNATIONAL LIMITED,
PRICEWATERHOUSECOOPERS LLP (U.S.),
PRICEWATERHOUSECOOPERS LLP (U.K.),
KPMG LLP, KPMG INTERNATIONAL, and
KPMG ACCOUNTANTS NV

        Defendants,

    and

THE "SHELL" TRANSPORT AND TRADING
COMPANY, PLC and THE ROYAL DUTCH
PETROLEUM COMPANY,

        Nominal Defendants.

Civil Action No. 2:04-cv-03603
(DMC-MF)

### STIPULATION OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between and among Plaintiffs UNITE National Retirement Fund and Plumbers and Pipefitters National Pension Fund (who have sued derivatively on behalf of Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, plc) and Nominal Defendants Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, plc, through their respective duly authorized counsel, that the lawsuit captioned *UNITE National Retirement Fund, Plumbers and Pipefitters National Pension Fund, derivatively on behalf of Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, plc v. Watts, et. al*, Civil Action No. 2:04-cv-03603 (DMC-MF) (United States District Court for the District of New Jersey), and all matters that were raised or could have been raised in that lawsuit against (i) Nominal Defendants Royal Dutch Petroleum Company, The "Shell" Transport and Trading Company, plc, their affiliates or subsidiaries, (ii) Defendants Philip Watts, Judy Boynton, Walter Van De Vijver, Frank Coopman, Jeroen Van Der Veer, Paul Skinner, Marten Van Der Bergh, Robert J. Routs, Malcolm Brinded, Mark Moody-Stuart, Henny De Ruiter, Luis Giusti, Ronald Oxburgh, Aad Jacobs, Lawrence Ricciardi, Peter Burt, Mary (Nina) Henderson, Teymour Alireza, Eileen Buttle, Peter Job, John Kerr, Wim Kok, Jonkheer Aarnout Loudon, Hubert Markl, Jan Timmer, and Robbert Van Der List ; and (3) any other current or former directors, officers or employees of Nominal Defendants Royal Dutch Petroleum Company, The "Shell" Transport and Trading Company, plc, or their affiliates or subsidiaries are settled,

2

compromised and dismissed on the merits and with prejudice on the terms and conditions set forth in this Settlement Agreement and the Release set forth herein, subject to the approval of the Court.

## I.   DEFINITIONS

A.   As used in this Agreement, the following capitalized terms have the following meanings, unless a Section or Subsection of this Agreement provides otherwise:

1.   "Action" means the lawsuit captioned *UNITE National Retirement Fund, Plumbers and Pipefitters National Pension Fund, derivatively on behalf of Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, plc  v. Watts, et. al.*, Civil Action No. 2:04-cv-03603 (DMC-MF) (United States District Court for the District of New Jersey).

2.   "Agreement" or "Settlement Agreement" means this Stipulation of Settlement and the Exhibits hereto, including any subsequent amendments thereto.

3.   "Approval Date" means the date on which the Final Judgment and Order Approving Settlement are entered in this Action.

4.   "Attorneys' Fees and Expenses" means such funds as the Companies have agreed to pay to Plaintiffs' Counsel to compensate them (and any other Counsel representing Plaintiffs) for their fees and expenses in connection with this Action.

3

5.      "Auditor Defendants" means PricewaterhouseCoopers International Limited, PricewaterhouseCoopers LLP (U.S.), PricewaterhouseCoopers LLP (U.K.), KPMG LLP, KPMG International, and KPMG Accountants NV.

6.      "Boards" means the Boards of Directors of the Companies.

7.      "Class Actions" means any putative class actions filed prior to the Action and currently pending against the Companies or their affiliates, including the consolidated securities class action captioned *In re Royal Dutch/Shell Transport Securities Litigation*, Civil Action No. 04-374 (JWB) (Consolidated Cases), currently pending in the United States District Court for the District of New Jersey.

8.      "Companies" or "Shell" means Royal Dutch Petroleum Company ("RD") and The "Shell" Transport and Trading Company, plc ("STT"), their successors, predecessors, and their present and former subsidiaries and affiliates.  "Royal Dutch Shell" means the successor to the Companies to be formed from the proposed unification announced by the Companies on October 28, 2004.

9.      "Companies' Counsel" or "Defendants' Counsel" means the law firms of Debevoise & Plimpton LLP and LeBoeuf, Lamb, Greene & MacRae LLP.

10.      "Complaint" means the Amended Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Abuse of Control, Unjust Enrichment and Constructive Fraud filed in this Action by Plaintiffs on or about September 30, 2004.

11.      "Court" means the United States District Court for the District of New Jersey.

12.     "Derivative Final Settlement Date" means the date on which the
Final Judgment and Order Approving Settlement in this Action become final.  For
purposes of this definition, the Final Judgment and Order Approving Settlement in this
Action shall become final:

a.     if no appeal is taken therefrom, on the date on which the
time to appeal therefrom has expired;

b.     if any appeal is taken therefrom, on the date on which all
appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing
*en banc* and petitions for *certiorari* or any other form of review, have been finally
disposed of in a manner that does not result in any alteration of the Final Judgment and
Order Approving Settlement in this Action; or

c.     on a date after entry of the Final Judgment and Order
Approving Settlement in this Action, which date counsel for the Parties agree to in
writing.

13.     "Fairness Hearing" means the hearing at or after which the Court
will make a final decision whether to approve this Agreement as fair, reasonable and
adequate and in the best interests of the Company and its Stockholders.

14.     "Final Judgment" means the judgment entered pursuant to the
Final Judgment, as contemplated in Section X of this Agreement.  A copy of the
proposed Final Judgment is attached hereto as Exhibit D.

15.     "Hearing Order" means the order to be entered by the Court
concerning notice, administration and the Fairness Hearing, as contemplated in Section

5

IX of this Agreement. A copy of the proposed Hearing Order is attached hereto as Exhibit B.

16.    "Individual Defendants" means Philip Watts, Judy Boynton, Walter Van De Vijver, Frank Coopman, Jeroen Van Der Veer, Paul Skinner, Marten Van Der Bergh, Robert J. Routs, Malcolm Brinded, Mark Moody-Stuart, Henny De Ruiter, Luis Giusti, Ronald Oxburgh, Aad Jacobs, Lawrence Ricciardi, Peter Burt, Mary (Nina) Henderson, Teymour Alireza, Eileen Buttle, Peter Job, John Kerr, Wim Kok, Jonkheer Aarnout Loudon, Hubert Markl, Jan Timmer, and Robbert Van Der List.

17.    "Interest Rate" means interest calculated on a simple interest basis based upon the 90-day Treasury bill rate on the first (1st) day of each month, as published in *The Wall Street Journal* under the description of "Money Rates."

18.    "Notice" means the legal notice of the terms of the proposed settlement to be provided to Stockholders, as approved in form and content by Plaintiffs' Counsel and Companies' Counsel. A copy of the proposed Notice is attached hereto as Exhibit C.

19.    "Order Approving Settlement" means the order approving the settlement and this Agreement as contemplated in Section X of this Agreement. A copy of the proposed Order Approving Settlement is attached hereto as Exhibit E.

20.    "Parties" means Plaintiffs and the Companies, collectively, and, where applicable, their respective counsel.

21.    "Plaintiffs" means UNITE National Retirement Fund and Plumbers and Pipefitters National Pension Fund.

6

22.    "Plaintiffs' Counsel" means the law firms of Lerach Coughlin

Stoia Geller Rudman & Robbins LLP, Weiss & Lurie,  Robbins Umeda and Fink, LLP,

and Greenberg Dauber Epstein & Tucker.

23.    "Release" means the release set forth in Section VII.A of this

Agreement.

24.    "Releasees" means (*i*) the Individual Defendants and each of their

heirs, executors, administrators and assigns, (*ii*) the Companies and each of their past

present and future parents, subsidiaries, predecessors, successors and assigns and

affiliates, and each of their respective past, present and future officers, directors,

employees, agents, representatives, attorneys, heirs, administrators, executors, insurers,

predecessors, successors, and assigns, or any of them, including any person or entity

controlled by, controlling or under common control with any of them.  Releasees does not

include any auditor, accountant and/or accountant consultant who presently provides or

has at any time provided accounting, auditing and/or consulting services to the

Companies, whether directly or indirectly, other than as an employee of the Companies,

including without limitation, the Auditor Defendants, and each of their past, present and

future parents, subsidiaries, predecessors, successors, assigns and affiliates, and each of

their respective past, present and future officers, directors, partners, principals,

employees, agents, representatives, attorneys, heirs, administrators, executors, insurers,

predecessors, successors, and assigns, or any of them, including any person or entity

controlled by, controlling, or under common control with any of them.

25.     "Related Derivative Actions" means *Soojian v. Jacobs, et. al,* Civil

Action No. 04 CV-4160 (filed June 2, 2004 in the United States District Court for the

Southern District of New York) ("*Soojian*"); *Epstein v. Oxburgh, et. al,* Case No.

04168560 (filed June 8, 2004 in the Supreme Court of the State of New York in the

County of New York) ("*Epstein*"); and *Staehr v. Van Der Veer, et. al,* Case No.

04112723 (filed September 2, 2004 in the Supreme Court of the State of New York in the

County of New York) ("*Staehr*").

26.     "Stockholders" means all individuals or entities who hold or

beneficially own, directly or indirectly, common stock, ADRs or other equity securities

of the Companies as of the date of the Hearing Order.

B.     Capitalized terms used in this Agreement but not defined above shall have

the meanings ascribed to them in this Agreement.

## II.     BACKGROUND

### A.     Shell's Recategorization of Proved Hydrocarbon Reserves

1.     On January 9, 2004, Shell announced that, based on the results of

an internal review, it would recategorize approximately 3.9 billion barrels of oil

equivalent ("boe") of proved reserves.  Following completion of the internal review and

subsequent efforts on the recategorization, Shell ultimately recategorized 4.47 billion

boe, or approximately 23%, of the proved reserves it reported as of year-end 2002,

because they did not comply with the applicable definitions of "proved" reserves for

Securities and Exchange Commission hydrocarbon reserve reporting (the "Reserves

Recategorization").  On October 28, 2004, Shell announced that it was considering

8

potential additional recategorizations as a result of the detailed audit processes put in place following the Reserves Recategorization.

2.      On February 5, 2004, Shell announced that its Group Audit Committee ("GAC") was conducting an internal inquiry into the processes surrounding past reserves bookings.  On March 3, 2004, following a preliminary report to the GAC on the independent review, two senior executives of the Company resigned, Sir Philip Watts, Chairman of Shell's Committee of Managing Directors, and Walter van de Vijver, CEO of the Exploration and Production business.

3.      On April 19, 2004, Shell reported that the GAC's independent investigation into the circumstances surrounding the Reserves Recategorization had been completed and that the almost 500-page report of the investigation (the "GAC Report") had been accepted by the Boards.  Consistent with its earlier commitment to make public the main conclusions of the GAC investigation, Shell released the Executive Summary and the Remedial Action sections of the GAC Report to the public.

B.      **The Derivative Actions**

1.      On June 2, 2004, *Soojian* was filed in the United States District Court for the Southern District of New York on behalf of RD shareholders claiming that the individual defendants in that action had breached their fiduciary duties to RD and should be liable for indemnification to RD for the losses they had caused.  The *Soojian* Complaint also seeks an order from the court requiring the defendants to "implement corrective measures that will rectify all such wrongs as have been committed and prevent their recurrence."

2.     On June 8, 2004, *Epstein* was filed in the Supreme Court of the State of New York for the County of New York on behalf of STT shareholders claiming that the individual defendants in that action had breached their fiduciary duties to STT and should be liable for indemnification to STT for the losses they had caused. The *Epstein* Complaint also seeks an order from the court requiring the defendants to "implement corrective measures that will rectify all such wrongs as have been committed and prevent their recurrence."

3.     On June 25, 2004, this Action was filed in the Superior Court of New Jersey for Middlesex County. On July 28, 2004, Auditor Defendants KPMG LLP and PricewaterhouseCoopers LLP (U.S.) removed this Action to the Court. On September 30, 2004 the Complaint was filed. The Action includes claims against the Individual Defendants for breach of fiduciary duties or aiding and abetting breaches by others, abuse of their control over the Companies, gross mismanagement, constructive fraud and unjust enrichment. The Action further alleges professional negligence and accounting malpractice against the Auditor Defendants. The Action seeks monetary damages, an accounting by all defendants of the damages they caused to the Companies and "special benefits and unjust enrichment" the defendants have obtained and an order directing the Companies "to take all necessary actions to reform and improve their corporate governance and internal control procedures to comply with Sarbanes-Oxley." The Complaint specifies a list of corporate governance policies that the Companies would need to adopt, including policies relating to the "unification of the two Boards" and "a proposal to simplify the corporate structure."

4.     On September 2, 2004, *Staehr* was filed in the Supreme Court of the State of New York for the County of New York on behalf of shareholders of RD claiming that the individual defendants in that action had breached their fiduciary duties and engaged in other misconduct and should be liable to RD for the losses they caused to RD as well as disgorge to RD any unjust profits they realized.

### C.     Initial Discussions

1.     On September 24, 2004, Plaintiffs' Counsel and representatives of Plaintiffs met with the Companies' Counsel and senior in-house legal counsel for Shell. The Parties discussed the various jurisdictional, venue and service issues arising out of the Action and the Related Actions.  The Parties also discussed the proposed corporate governance relief that Plaintiffs had included in the Complaint and agreed that Plaintiffs' Counsel, together with an expert in corporate governance matters, would provide Shell with a more detailed set of proposed governance terms that could be evaluated by the Companies' Counsel.  Plaintiffs' Counsel provided a more detailed list of such terms in early October 2004 (the "Corporate Governance Terms").

2.     On October 8, 2004, Plaintiffs' Counsel made a 21-page demand on the Companies setting forth in detail Plaintiffs' proposed corporate governance enhancements.

### D.     Shell's Unification Announcement

1.     On October 28, 2004, Shell announced that "[t]he Boards of RD and ST&T have unanimously agreed to propose to their shareholders the unification of the Royal Dutch / Shell Group of Companies under a single parent company, Royal

Dutch Shell plc. Real reforms in management and governance structure are also planned." Under the terms of the proposed unification transaction, the Royal Dutch/Shell Group of Companies will have a single parent company, Royal Dutch Shell, with a single board of directors and a Chief Executive Officer. Shell further announced that it expected the transaction to be completed in May 2005.

2.     The October 28 Unification announcement was a product of a Governance Review and resulted from a Steering and Working Group's consideration of the views expressed by a number of shareholders, including the positions advanced by Plaintiffs through the Complaint in this Action and in the Related Derivative Actions.

E.     **Settlement Discussions**

1.     On December 1, 2004, the Companies' Counsel, senior counsel from Shell, Plaintiffs' Counsel, representatives from Plaintiffs and Plaintiffs' corporate governance expert met at Shell's offices in London, England. In that meeting, the Parties held extensive discussions on the Corporate Governance Terms, including a discussion of provisions that the Companies' Counsel would be willing to recommend that Shell adopt as part of a potential resolution of the Action and the Related Actions. The Parties also discussed the prospects of a potential resolution and the timing of such a resolution given the progress of the Unification announced on October 28, 2004. At the end of the meeting and as a next step in the Parties' consideration of a potential resolution, the Companies' Counsel agreed to provide Plaintiffs with revised Corporate Governance Terms that the Companies' Counsel would be prepared to present and recommend to the Companies and the Boards.

12

2.      Between December 1, 2004 and May 11, 2005, the Parties, their

counsel and plaintiffs' expert continued to negotiate corporate governance enhancements.

A definitive set of corporate governance changes was agreed to on May 11, 2005, which

is incorporated herein by reference and attached hereto as Exhibit A.

**III.    SETTLEMENT RELIEF**

As a direct result of the pendency and prosecution of the Action and the extensive

negotiations between the Parties, a proposed settlement has been reached that includes

the following:

A.      Within 30 days after the Approval Date or such other time as the parties

may agree, the Boards or, as appropriate, the Board of Directors of Royal Dutch Shell

will take such steps as are necessary to adopt and implement the Corporate Governance

Principles in Exhibit A (the "Corporate Governance Principles"), to the extent such

Corporate Governance Principles are consistent with applicable laws, as policies,

standards, procedures and/or guidelines of Royal Dutch Shell.  The Company believes

that the Corporate Governance Principles can be implemented in a manner consistent

with applicable laws.

B.      The Parties agree that the Corporate Governance Principles as adopted

will be reflected in the appropriate corporate governance and other policy documents of

Royal Dutch Shell and constitute a substantial benefit to Royal Dutch Shell.

Accordingly, the Parties agree that the Company may, in good faith and in the reasonable

exercise of judgment, alter or modify as necessary the specific language of the Corporate

Governance Principles to facilitate such implementation, *provided however,* that no

material change to the substance of the Corporate Governance Principles shall be made absent approval of the Plaintiffs unless such change is made pursuant to Section III.C. The Parties further agree that reasonable interpretation of the Corporate Governance Principles shall be within the sole discretion of the Company.

C.     The Corporate Governance Principles, as adopted, shall be subject to amendment by the Board, in whole or in part, so long as such amendment:  (i) is made to reflect consistency with applicable laws; or (ii) is determined in good faith to be in the best interest of Royal Dutch Shell by a majority of the independent members of the Board of Directors or the shareholders.  Shareholders will be advised of any such changes.

## IV.    DISCOVERY

A.     Subject to the provisions of a mutually-acceptable confidentiality agreement which includes, among other things, a provision that provides that the discovery contemplated by this Settlement Agreement shall be used only in connection with the settlement of this Action, Plaintiffs' Counsel will continue to conduct reasonable discovery into the facts underlying the claims in the Complaint to confirm that the underlying facts are consistent with their understanding, as supported by their review of materials, including the Companies' public filings and the Executive Summary of the GAC Report, and that the proposed Settlement Agreement is fair, reasonable and adequate.

B.     Plaintiffs' Counsel has stated that such additional discovery will consist of a review of relevant Shell documents, including the full GAC Report and supporting materials and testimony of Shell employees before the United States Securities and

14

Exchange Commission and the United Kingdom Financial Services Authority, which additional discovery will be undertaken pursuant to the terms of the confidentiality agreement to be negotiated pursuant to Section IV.A above.

C.      The discovery contemplated by this Section shall be conducted as soon as practicable after the execution of this Settlement Agreement, but in any case shall be completed no later than August 31, 2005.

D.      If, as a result of concluding the additional discovery contemplated by this Section, Plaintiffs and Plaintiffs' Counsel continue to believe that the Settlement Agreement is fair, reasonable and adequate, the Parties shall execute an amendment to this Settlement Agreement indicating that the discovery contemplated by the Settlement Agreement has been completed and setting out Plaintiffs' and Plaintiffs' Counsel's finding that the Settlement Agreement is fair, reasonable and adequate.

E.      If, as a result of concluding the additional discovery contemplated by this Section, Plaintiffs and Plaintiffs' Counsel reasonably and in good faith do not believe that the proposed Settlement Agreement is fair, reasonable and adequate, they will have the right to terminate or to renegotiate this Settlement Agreement within 10 days of the conclusion of the discovery contemplated by this Section.

V.      **NOTICE TO STOCKHOLDERS AND RIGHT OF COMMUNICATION**

A.      **Notice**

1.      Subject to the requirements of the Hearing Order and no later than 45 calendar days before the Fairness Hearing, the Companies shall cause the Notice to be published in the two national newspapers with the largest reported circulation in the

United States, the Netherlands and the United Kingdom and the international editions of two newspapers. In addition, the Companies will post the Notice on the www.shell.com website beginning 45 calendar days before the Fairness Hearing and continuing through the date of the Fairness Hearing. The Companies will pay for the costs associated with producing and publishing the Notice.

2.       The Notice shall: (*i*) contain a short and plain statement of the background of the Action and the proposed settlement; (*ii*) generally describe the  nature of the relief provided; (*iii*) state that any relief is contingent on the Court's final approval of the proposed settlement; (*iv*) inform Stockholders of the date of the Fairness Hearing and of their right to object to the Settlement Agreement; (*v*) conform to the requirements of the United States Federal Rules of Civil Procedure, including but not limited to, Fed. R. Civ. Pro. 23.1, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law; and (*vi*) otherwise be in a manner and form agreed upon by the Parties to this Settlement Agreement and approved by the Court.

3.       A copy of the proposed Notice is attached hereto as Exhibit C.

B.       **Right of Communication with Stockholders**

1.       The Companies expressly reserve the right to communicate with and respond to inquiries by Stockholders with respect to matters unrelated to this Settlement Agreement, including but not limited to the Unification, and may do so through any appropriate agency.

2.       The Companies may undertake such efforts to communicate with Stockholders regarding the Notice and terms of this Settlement as the Companies deem

necessary or appropriate, including telephone communications. Any written communication to the Companies by any Stockholder regarding the Settlement Agreement, or any written communication to a Stockholder by the Companies regarding the Settlement Agreement, shall be provided to Plaintiffs' Counsel as soon as practical after the communication is received or generated, as the case may be.

C.      **Media Communications**

1.      Plaintiffs' Counsel and Companies' Counsel agree to cooperate in good faith to ensure that (*i*) any comments about or descriptions of the proposed settlement in the media or any other public forum are balanced, fair and accurate and (*ii*) any press releases announcing the proposed settlement are provided in advance to Plaintiffs' Counsel and Companies' Counsel before dissemination or publication; *provided however*, that the Companies shall be able to make, without notification to or prior review or approval by Plaintiffs' Counsel, any and all disclosures regarding the Settlement Agreement that the Companies believe may be required or appropriate under applicable law or by the rules of any securities exchange on which the Companies' securities trade, or as required in connection with a judicial or regulatory proceeding.

## VI.    OBJECTIONS TO SETTLEMENT

A.      Any Stockholder who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement or the proposed settlement, must deliver to Plaintiffs' Counsel and Defendants' Counsel, and file with the Court, no later than 14 calendar days before the Fairness Hearing or as the Court may otherwise direct, a statement of his, her or its objection, as well as the specific reason(s), if any, for each

objection, including any legal support the Stockholder wishes to bring to the Court's attention and any evidence the Stockholder wishes to introduce in support of the objection. Stockholders may so object either on their own or through an attorney hired at their own expense.

B.     If a Stockholder hires an attorney to represent him, her or it, the attorney must (*i*) file a notice of appearance with the Clerk of the Court no later than 14 calendar days before the Fairness Hearing, or as the Court otherwise may direct, and (*ii*) deliver to Plaintiffs' Counsel and Defendants' Counsel no later than 14 calendar days before the Settlement Hearing a copy of the same.

C.     Any Stockholder who files and serves a written objection, as described in this Section, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Stockholder's expense, to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement. Stockholders or their attorneys who intend to make an appearance at the Fairness Hearing must deliver to Plaintiffs' Counsel and Defendants' Counsel no later than 14 calendar days before the Fairness Hearing, or as the Court may otherwise direct, a notice of intention to appear.

D.     Any Stockholder who fails to comply with the provisions of this Section shall waive and forfeit any and all rights he, she or it may have to appear separately and/or object.

## VII.   RELEASE AND WAIVER, AND ORDER OF DISMISSAL

   A.   **Release and Waiver**

   1.   Plaintiffs and the Companies agree to the following release and waiver, which shall take effect upon the Derivative Final Settlement Date:

   a.   Subject to Sections VII.A.2, VII.A.3, VII.A.6 and VII.A.7 below, Plaintiffs and the Companies hereby release and discharge the Releasees from, and shall not now or hereafter institute, participate in, maintain, maintain a right to, or assert against the Releasees, either directly or indirectly, derivatively, on their own behalf, or on behalf of any other person or entity, any and all causes of action, claims, damages, awards, equitable, legal and administrative relief, interest, demands or rights, including, without limitation, claims for rescission, restitution, unjust enrichment or all damages of any kind, including those in excess of actual damages, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, that have been, could have been or might hereafter be alleged or asserted by Plaintiffs or the Companies against the Releasees or any of them in this Action, the Related Derivative Actions, or in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicatory body that relate in any way, directly or indirectly, to the allegations contained in the Complaint or in any of the complaints filed in the Related Derivative Actions, including, without limitation:

   (1)   any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations

19

that have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in this Action or the Related Derivative Actions;

(2)     any SEC filing by any of the Releasees for the period 1997 through the date of this Agreement;

(3)     any forward-looking statement made by any of the Releasees for the period 1997 through the date of this Agreement;

(4)     any disclosures of any sort made by any of the Releasees for the period 1997 through the date of this Agreement;

(5)     the Companies' hydrocarbon reserve and financial reporting and/or accounting practices for the period 1997 through the date of this Agreement, including without limitation any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations made or allegedly made in connection with or directly or indirectly relating to the Companies' financial statements, supplemental hydrocarbon reserve disclosures and/or internal financial controls, record-keeping or reporting mechanisms;

(6)     the salaries, bonuses, and termination or other payments paid to the Companies' present and former executives and/or directors (*i*) at any time before the date on which this Release becomes effective or (*ii*) if paid pursuant to an obligation entered into by the Companies before the date on which this Release becomes effective, then at any future time;

(7)     the Boards' supervision and oversight of the Companies' management and affairs during the period of 1997 through the date of this Agreement;

(8)     all claims relating in any way, directly or indirectly, to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences or oral or written statements or representations in connection with the Settlement Agreement or the settlement of this Action (including, without limitation, all claims respecting the negotiation and execution of this Agreement);

(9)     except as provided in this Agreement, any and all claims for attorneys' fees, expert witness fees and/or other costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing Plaintiffs in this Action or in the Related Derivative Actions, or by Plaintiffs in this Action, or any of them, in connection with or in any way related to this Action and/or the settlement of this Action; and/or

(10)     any breaches of fiduciary duty (or other duty placed upon corporate directors and officers by common law or statute) and/or obligations under federal or state law, including the United States securities laws.

2.     Notwithstanding any other provision of this Section, nothing in this Release shall be deemed to release the claims currently pending in the Class Actions or preclude Plaintiffs or Stockholders who are members of any certified class in the Class Actions from participating in any relief awarded in the Class Actions.

3.    Notwithstanding any other provision of this Section, nothing in this Release shall be deemed to release claims, if any, that the Companies may have against any Releasee who files, commences, prosecutes, intervenes in, or otherwise participates in, any action or proceeding against the Companies, or who asserts any claims (including for contribution or indemnity) against the Companies in any action or proceeding.

4.    Plaintiffs and the Companies expressly understand that principles of law in some jurisdictions, such as Section 1542 of the Civil Code of the State of California, provide that a general release does not extend to claims that a creditor does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, must have materially affected his settlement with the debtor. To the extent that, as a result of or notwithstanding the choice of law provisions in the Settlement Agreement, California or other law may be applicable, Plaintiffs and the Companies expressly waive with respect to Releasees all rights afforded by Section 1542 and all similar federal, state or foreign laws, rights, rules, or legal principles which may be applicable herein, and Plaintiffs and the Companies hereby agree and acknowledge that this is an essential term of this Release.  Section 1542 states as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding the provisions of Section 1542 and all similar federal, state or foreign laws, rights, rules, or legal principles which may be applicable herein, and for the purpose of implementing a full and complete release, Plaintiffs and the Companies understand

and agree that this Release is intended to include all claims, if any, which Plaintiffs

and/or the Companies may have and which Plaintiffs and/or the Companies do not now

know or suspect to exist in their favor against the Releasees, and that this Release

extinguishes those claims.

        5.      In connection with this Release, Plaintiffs and the Companies

acknowledge that they are aware that they may hereafter discover claims presently

unknown or unsuspected, or facts in addition to or different from those that they now

know or believe to be true with respect to the matters released herein.  Nevertheless, it is

the intention of Plaintiffs and the Companies in executing this Release fully, finally and

forever to settle and release all such matters, and all claims relating thereto, that exist,

hereafter may exist, or might have existed (whether or not previously or currently

asserted in any action or proceeding) with respect to the matters released.

        6.      Nothing in this Release shall preclude any action to enforce the

terms of this Agreement.

        7.      Notwithstanding any other provision of this Section, nothing in this

Release shall preclude any action by the Companies against any of the Individual

Defendants or other Releasees to:  (i) enforce the provisions of any severance or related

compromise agreement between the Companies or any affiliates and an Individual

Defendant that require the Individual Defendant to cooperate with the Companies and

relevant governmental authorities; or (ii) to recover attorney's fees and other expenses

advanced to an Individual Defendant if that Individual Defendant is ultimately

determined not to have met the applicable standards for indemnification under relevant law.

        8.      Plaintiffs and the Companies hereby agree and acknowledge that the provisions of this Release together constitute an essential term of the Settlement Agreement.

        **B.**     **Order of Dismissal and Release**

        1.      The Parties will seek and obtain from the Court a Final Judgment and an Order Approving Settlement as further described below in Section X. The Final Judgment and the Order Approving Settlement shall, among other things, (*i*) approve the Settlement Agreement as fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23.1; (*ii*) dismiss the Action as to the Companies and the Individual Defendants with prejudice and on the merits; (*iii*) incorporate the terms of the Release; (*iv*) incorporate the agreed upon Attorneys' Fees and Expenses set forth in Section VIII. A copy of the proposed Final Judgment and the proposed Order Approving Settlement are attached hereto as Exhibits D and E, respectively.

## VIII.  ATTORNEYS' FEES AND LITIGATION EXPENSES

        **A.**     As a unitary part of the settlement, set forth herein and in recognition of the benefits provided to the Companies as a result of the prosecution and settlement of this Action, the Companies agree to pay Plaintiffs an award of Attorneys' Fees and Expenses in this Action in the amount of nine million, two hundred thousand dollars ($9,200,000). The Attorneys' Fees and Expenses will be paid by the Companies, subject to the conditions below, within ten (10) business days of the Approval Date.

B.      If (*i*) the Final Judgment and Order Approving Settlement approving this

Action are reversed, vacated, modified and/or remanded for further proceedings or

otherwise disposed of in any manner other than one resulting in an affirmance of such

Final Judgment and Order Approving Settlement *and* the Companies or Plaintiffs

properly and timely terminate the Settlement Agreement in accordance with Section XI.B

of this Settlement Agreement or (*ii*) the Derivative Final Settlement Date does not occur

for any reason, then Plaintiffs' Counsel shall within 10 business days return to the

Companies the amount of Attorneys' Fees and Expenses paid by the Companies with

interest at the Interest Rate.

C.      Plaintiffs' Counsel's obligation to return any of the Attorneys' Fees and

Expenses, as described in Section VIII.B above, shall be evidenced by a promissory note,

which note shall be executed individually and on behalf of the firms.  A copy of the

promissory note is attached hereto as Exhibit F.  In addition, Plaintiffs' Counsel, as a

condition of receiving Attorneys' Fees and Expenses, on behalf of itself and each partner

and/or shareholder of it, agrees that their respective law firms and their partners and/or

shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this

Section VIII of the Settlement Agreement.  Without limitation, the law firms and their

partners and/or shareholders agree that the Court may, upon application of the

Companies, on notice to the law firms, summarily issue orders, including, but not limited

to, judgments and attachment orders, and may make appropriate findings of or sanctions

for contempt, against them or any of them should the law firms fail timely to repay any

amounts pursuant to this Section VIII of the Settlement Agreement.

D.     Neither the Companies nor Individual Defendants, nor any of their respective past, present and future parents, subsidiaries, predecessors, successors and assigns, nor any of their respective past, present and future officers, directors, partners, principals, employees, agents, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person, either directly or indirectly, in connection with this Action, this Settlement Agreement, or the proposed settlement, other than as expressly provided for in this Settlement Agreement.

## IX.     ORDER OF NOTICE, FAIRNESS HEARING AND ADMINISTRATION

A.     Within 30 days of execution of this Settlement Agreement, the Parties shall submit the Agreement to the Court, and seek and obtain from the Court a Hearing Order, unless otherwise agreed to by the Parties:

1.     finding that the proposed settlement is sufficient to warrant publishing Notice to Stockholders;

2.     scheduling the Fairness Hearing, to be held on such date as the Court may direct, to consider the fairness, reasonableness and adequacy of all aspects of the proposed settlement and whether its provisions should be approved by the Court;

3.     approving the proposed Notice and notice methodology described in this Agreement;

4.     directing the Companies or their designee(s) to cause the Notice to be published no later than 45 days before the Settlement Hearing;

26

5.      determining that the Notice to be provided to the Companies'
Stockholders in this Action and the manner in which the Notice is to be published
pursuant to this Agreement, constitute the best practicable notice and satisfy the
requirements of the United States Federal Rules of Civil Procedure (including Rule 23.1),
the United States Constitution (including the Due Process Clause) and any other
applicable law, and constitute due and sufficient notice of the Settlement Agreement and
Fairness Hearing to all persons or entities entitled to receive such notice;

6.      requiring the Companies to file proof of the publishing of the
Notice at or before the Fairness Hearing;

7.      authorizing the Companies to communicate with Stockholders
about the Action and the terms of the proposed settlement, subject to the terms of Section
V.B of this Agreement, and to engage in any other communications within the normal
course of the Companies' business, including but not limited to communications in
connection with the Unification;

8.      preliminarily enjoining Plaintiffs, the Stockholders and the
Companies (whether acting on their own behalf or by and through their Stockholders, or
any of them), or any of their respective representatives, trustees, successors, heirs and
assigns, from filing, commencing, prosecuting, intervening in, participating in (as a
nominal defendant or otherwise), or receiving any benefits or other relief from, any other
lawsuit, arbitration, or administrative, regulatory or other proceeding or order against the
Releasees in any jurisdiction based on or relating to the claims and causes of action that
are released by this Agreement pending the final ruling of the Court on the Settlement

Agreement; provided however, that nothing in this Settlement Agreement shall preclude shareholders or members of the alleged class in the Class Actions from participating in the Class Actions or receiving any relief awarded in the Class Actions;

       9.     requiring each Stockholder who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement or the proposed settlement, to deliver to Plaintiffs' Counsel and Defendants' Counsel and to file with the Court, no later than 14 calendar days before the Fairness Hearing, or at such other time as the Court may direct, a statement of his or her objection, as well as the specific reasons, if any, for each objection, including any legal support the Stockholder wishes to bring to the Court's attention and any evidence the Stockholder wishes to introduce in support of his or her objection, or be forever barred from separately objecting;

       10.     requiring any attorney hired by a Stockholder at the Stockholder's expense for the purpose of objecting to this Agreement, the proposed settlement, or the award of Attorneys' Fees and Expenses, to file with the Clerk of the Court and deliver to Plaintiffs' Counsel and Defendants' Counsel no later than 14 calendar days before the Fairness Hearing, or as the Court may otherwise direct, a notice of appearance;

       11.     requiring any Stockholder who files and serves a written objection and who intends to make an appearance at the Fairness Hearing, either in person or through personal counsel hired at the Stockholder's expense, to file with the Court and deliver to Plaintiffs' Counsel and Defendants' Counsel no later than 14 calendar days before the Fairness Hearing, or as the Court may otherwise direct, a notice of intention to appear;

12.    directing Plaintiffs' Counsel and Defendants' Counsel promptly to furnish each other with copies of any and all objections that might come into their possession; and

13.    containing any additional provisions that might be necessary to implement and administer the terms of this Agreement and the proposed settlement.

B.    None of the Plaintiffs will object to the proposed settlement, file an appeal therefrom or otherwise seek review of any order approving the proposed settlement.

C.    A copy of the proposed Hearing Order is attached hereto as Exhibit B.

## X.    FINAL APPROVAL, FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT

A.    At or after the Fairness Hearing, and upon the Court's approval of this Agreement, the Parties shall seek and obtain from the Court a Final Judgment and Order Approving Settlement.  The Final Judgment and/or the Order Approving Settlement shall, among other things, and taking into consideration all the facts and circumstances outlined in this Agreement:

1.    find that Plaintiffs have stock in one or both of the Companies continuously since the commencement of this Action and otherwise have standing to prosecute this Action on behalf of the Companies and their Stockholders;

2.    find that the Court has jurisdiction to approve the Settlement Agreement and exhibits thereto;

3.    approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate, consistent and in compliance with all applicable

requirements of United States law, including the United States Constitution (including the Due Process Clause), the Federal Rules of Civil Procedure, the Rules of the Court, and any other applicable law, and in the best interests of the Companies and their Stockholders;

4.      direct the Parties and their counsel to implement and consummate this Agreement according to its terms and provisions;

5.      declare this Agreement to be binding on – and, as to all claims and issues that have or could have been raised in this Action, to have *res judicata* and other preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of – the Parties, as well as their past, present and future parents, subsidiaries, predecessors, successors and assigns and affiliates and each of their respective past, present and future officers, directors, employees, agents, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors, and assigns, or any of them, including any person or entity controlled by or controlling or under the control of any of them;

6.      find that the Notice provided to the Companies' Stockholders in this Action and the manner in which the Notice was published, constituted the best practicable notice and satisfied the requirements of the Federal Rules of Civil Procedure (including Rule 23.1), the United States Constitution (including the Due Process Clause) and any other applicable law, and constituted due and sufficient notice of the Settlement Agreement and Fairness Hearing to all persons or entities entitled to receive such notice;

7.      find that Plaintiffs' Counsel and Plaintiffs brought the Action and the Related Derivative Actions in good faith and have adequately represented the interests of the Companies and their Stockholders for purposes of entering into and implementing the settlement;

8.      dismiss the Action as to the Companies and the Individual Defendants on the merits and with prejudice, without fees or costs to any party except as provided in this Agreement;

9.      incorporate the Release set forth above in Section VII.A, make the Release effective as of the date of the Derivative Final Settlement Date, and forever discharge the Releasees from any claims or liabilities arising from or related to the matters covered by the Release;

10.      permanently bar and enjoin Plaintiffs, the Companies' shareholders and the Companies (whether acting on their own behalf or by and through their shareholders, or any of them), or any of their respective representatives, trustees, successors, heirs and assigns, from filing, commencing, prosecuting, intervening in, participating in (as a nominal defendant or otherwise), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order against the Releasees in any jurisdiction based on or relating to the claims and causes of action that are released by this Agreement; *provided however,* that nothing in this Settlement Agreement shall preclude shareholders or members of the alleged class in the Class Actions from participating in the Class Actions or receiving or participating in relief, if any, awarded in the Class Actions;

11.     authorize the Parties, without further approval from the Court, to

agree to and adopt such amendments, modifications and expansions of this Agreement as

(*i*) are consistent with the Final Judgment and Order Approving Settlement and (*ii*) do not

limit the rights of Plaintiffs, the Companies and/or their Stockholders under the

Settlement Agreement;

12.     without affecting the finality of the Final Judgment and the Order

Approving Settlement for purposes of appeal, retain jurisdiction as to all matters relating

to the administration, consummation, enforcement and interpretation of this Agreement,

the Final Judgment and the Order Approving Settlement, and for any other necessary

purpose; *provided however*, that nothing in this subsection shall restrict the ability of the

Parties to exercise their rights under Section XI.A below; and

13.     incorporate any other provisions that the Court deems necessary

and just.

B.     Copies of the proposed Final Judgment and the Order Approving

Settlement are attached hereto as Exhibits D and E, respectively.

## XI.     MODIFICATION OR TERMINATION OF THE SETTLEMENT AGREEMENT

A.     The terms and provisions of this Agreement may be amended, modified or

expanded by agreement of the Parties and approval of the Court; *provided however*, that

after entry of the Final Judgment and Order Approving Settlement the Parties may by

agreement effect such amendments, modifications or expansions of this Agreement and

its implementing documents (including all exhibits thereto) without notice to or approval

by the Court if such changes are consistent with the Court's Final Judgment and Order Approving Settlement and do not limit the rights of Plaintiffs, the Companies and/or their Stockholders under the Settlement Agreement.

B.    This Agreement will terminate at the sole option and discretion of Plaintiffs or the Companies if (*i*) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of the Settlement Agreement or the proposed settlement that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice and/or the terms of the Release, or (*ii*) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Judgment or Order Approving Settlement, that the terminating party in its (or their) sole judgment and discretion reasonably believe(s) to be material. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Subsection, no later than 20 days after receiving notice of the event giving rise to the grounds for the termination.

C.    If an option to withdraw from and terminate this Agreement arises under Section XI.B of this Agreement, (*i*) neither Plaintiffs nor the Companies will be required for any reason or under any circumstance to exercise that option and (*ii*) any determination to exercise that option shall be made in good faith.

D.    If this Agreement is terminated pursuant to its terms, then:

33

1.      this Agreement shall be null and void and shall have no force or effect, and no party to this Agreement shall be bound by any of its terms, except for the terms of this subsection;

2.      this Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of Plaintiffs and the Companies, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

3.      the Companies, and their current and former parents, subsidiaries, predecessors, successors, heirs, agents, assigns, officers, directors, employees, partners, principals, attorneys and representatives expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in this Action;

4.      Plaintiffs and the Companies and their current and former parents, subsidiaries, predecessors, successors, heirs, agents, assigns, officers, directors, employees, partners, principals, attorneys and representatives expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in this Action;

5.      neither this Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever;

6.      any order or judgment entered after the date of this Agreement will be deemed vacated and will be without any force and effect;

7.      if required, any Attorneys' Fees and Expenses paid by the

Companies will be returned to the Companies pursuant to in Section VIII.B. above; and

8.      any confidentiality agreement executed with respect to the

discovery contemplated by Section IV above shall remain in full force and effect.

## XII.   GENERAL MATTERS AND RESERVATIONS

A.      The obligation, though not the ability, of the Parties to conclude the

proposed settlement is and will be contingent on each of the following:

1.      acceptance of this Settlement Agreement by the Boards;

2.      compliance by the Companies with Section III.A. of this

Agreement;

3.      occurrence of the Derivative Final Settlement Date;

4.      dismissal with prejudice of the Related Derivative Actions;

5.      payment of the Attorneys' Fees and Expenses as required by

Section VII; and

6.      any other conditions stated in this Agreement.

B.      The Parties and their counsel agree to keep the existence and contents of

this Agreement and all related negotiations confidential until the date of the first public

announcement by the Companies, which shall occur at the Companies' discretion;

*provided however*, that this Section shall not prevent earlier disclosure of such

information (*i*) by the Companies to the Boards, to their employees, auditors or rating

agencies, or to its Directors and Officers or general liability insurers or (*ii*) by the

Companies or Plaintiffs to any person or entity (such as experts and/or courts) to whom

the Parties agree disclosure must be made to effectuate the terms and conditions of this Agreement; *provided however*, that the Companies shall be able to make, without notification to, or prior review or approval by, Plaintiffs' Counsel, any and all disclosures regarding the Settlement Agreement that the Companies believe may be required or appropriate under applicable law or by the rules of any securities exchange on which securities of the Companies are traded, or as required in connection with a judicial or regulatory proceeding.

C.      By execution of this Agreement, neither the Individual Defendants nor the Companies intend to release any claim against any insurer for any cost or expense hereunder, including attorneys' fees and costs.

D.      Plaintiffs' Counsel represents that (*i*) it is authorized to enter into this Agreement on behalf of Plaintiffs and any other Plaintiffs' counsel with respect to all claims released herein and (*ii*) it is seeking to protect the interests of the Companies and their Stockholders.

E.      Ralph C. Ferrara represents that he is authorized to enter into this Agreement on behalf of the Companies.

F.      This Agreement sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by the Parties or their counsel.  The Parties expressly warrant and represent and do hereby state that no promise or agreement that is not herein expressed has been made in executing this Agreement.  There are no warranties between the parties of any kind other than those embodied in this Agreement.

G.    In entering into this Agreement, no party has relied upon any representation, statement or warranty that is not set forth expressly herein.

H.    This Agreement shall be governed by and interpreted according to the laws of New Jersey, excluding its conflict-of-law provisions.

I.    Any action to enforce this Agreement shall be commenced and maintained only in the Court.

J.    Whenever this Agreement requires or contemplates that one party shall or may give notice to another, notice shall be provided by facsimile and/or next-day (excluding Sunday) express delivery service as follows:

    1.    If to Defendants' Counsel, then to:

        Ralph C. Ferrara, Esq.
        LeBoeuf, Lamb, Greene & MacRae LLP
        1875 Connecticut Ave, N.W.
        Washington, D.C. 20009
        Facsimile : 202-986-8102

        Jonathan R. Tuttle, Esq.
        Debevoise & Plimpton LLP
        555 Thirteenth Street N.W.
        Washington, DC  20004
        Facsimile:  202-383-8118

    2.    If to Plaintiffs, then to:

        Joy Ann Bull, Esq.
        Lerach Coughlin Stoia Geller Rudman & Robbins LLP
        401 B Street, Suite 1600
        San Diego, CA 92101-4297
        Facsimile:  619-231-7423

K.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by

this Agreement or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this subsection, "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal holiday.

L.      The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

M.      All Parties agree that this Agreement was drafted at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed; *provided*, that there shall be no presumption for or against any Party that drafted all or any portion of this Settlement Agreement.

N.      In no event shall this Agreement, any of its provisions, or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action, any other action, or any judicial, administrative, regulatory or other proceeding,

except a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to the Companies and the Individual Defendants, or as a waiver by the Companies and/or the Individual Defendants of any applicable defense, or as a waiver by Plaintiffs or the Companies of any claims, causes of action or remedies.

O.     The Companies expressly deny any wrongdoing alleged in the pleadings and do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in this Action, but consider it desirable for this Action to be settled and dismissed because this settlement will (*i*) provide substantial benefits to the Companies and their Stockholders, (*ii*) avoid the substantial expense and further disruption of the management and operation of the Companies' business due to the Action and (*iii*) finally put Plaintiffs' claims and the underlying matters to rest.

P.     Plaintiffs' Counsel expressly represent that the allegations contained in the Complaint were made in good faith and have a substantial basis in fact. They nevertheless consider it desirable for the Action to be settled and dismissed in light of the risks of this litigation and because of the substantial benefits provided to the Companies and their Stockholders under the proposed settlement.

Q.    The Parties to this Agreement, their successors and assigns, and their attorneys undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of its terms.

R.    The Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

S.    This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile shall be fully and legally binding on a Party, and the Party so executing shall promptly provide a fully executed counterpart to each of the other Parties.

T.     All Releasees who are not parties to this Agreement are intended third-party beneficiaries entitled to enforce the terms of the Release set forth herein.

Agreed to as of this 22nd day of July, 2005.

_____     _____
William S. Lerach, Esq.                       Ralph C. Ferrara, Esq.
Joy Ann Bull, Esq.                              LeBoeuf, Lamb,
Lerach Coughlin Stoia Geller                Greene & MacRae LLP
  Rudman & Robbins LLP                    1875 Connecticut Ave, N.W.
401 B Street, Suite 1600                       Washington, D.C. 20009
San Diego, CA 92101

                                                        Jonathan R. Tuttle, Esq.
                                                        Debevoise & Plimpton LLP
                                                        555 Thirteenth Street, N.W.
                                                        Washington, D.C.  20004


Counsel for Plaintiffs Suing Derivatively      On behalf of the Companies
On Behalf of Royal Dutch Petroleum
Company and The "Shell" Transport
and Trading Co., plc

T.      All Releasees who are not parties to this Agreement are intended third-party beneficiaries entitled to enforce the terms of the Release set forth herein.

Agreed to as of this 22nd day of July, 2005.


_____          _____
William S. Lerach, Esq.                      Ralph C. Ferrara, Esq.
Joy Ann Bull, Esq.                           LeBoeuf, Lamb,
Lerach Coughlin Stoia Geller                 Greene & MacRae LLP
  Rudman & Robbins LLP                       1875 Connecticut Ave, N.W.
401 B Street, Suite 1600                     Washington, D.C. 20009
San Diego, CA 92101
                                             Jonathan R. Tuttle, Esq.
                                             Debevoise & Plimpton LLP
                                             555 Thirteenth Street, N.W.
                                             Washington, D.C.  20004


Counsel for Plaintiffs Suing Derivatively    On behalf of the Companies
On Behalf of Royal Dutch Petroleum
Company and The "Shell" Transport
and Trading Co., plc


41