GREENBERG DAUBER EPSTEIN
  & TUCKER
RUSSELL S. BURNSIDE (RB 8484)
SUMEETA A. GAWANDE (SG 9596)
One Gateway Center, Suite 600
Newark, NJ 07102
Telephone: 973/643-3700
973/643-1218 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (WL-5944)
JOY ANN BULL (JB-2191)
ARTHUR C. LEAHY (AL-2547)
PATRICK W. DANIELS (PD-5402)
MARY K. BLASY (MB-4314)
X. JAY ALVAREZ (XA-0117)
VALERIE L. McLAUGHLIN (VM-0958)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITE NATIONAL RETIREMENT FUND, et al., | ) ) ) | No. 04-CV-3603-(DMC) (MF) |
| Plaintiffs, | ) ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF DERIVATIVE SETTLEMENT |
| vs. | ) ) | DATE: October 21, 2005 |
| PHILIP WATTS, et al., | ) ) | TIME: 9:30 a.m. |
| Defendants. | ) ) ) | COURTROOM: The Honorable Dennis M. Cavanaugh |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................... 1

II.    FACTUAL BACKGROUND ........................................................... 1

III.   SUMMARY OF SETTLEMENT.................................................... 3

IV.   THE SETTLEMENT MEETS THE STANDARDS FOR JUDICIAL
APPROVAL .................................................................................... 3

     A.    The Benefit to Shell is Noteworthy......................................... 4

     B.    Risks in Establishing Liability and Damages are Substantial.............. 6

     C.    The Expense of Continued Litigation Would Be Considerable .......... 7

     D.    The Reaction of Shell Stockholders to the Settlement Supports
Approval .................................................................................... 8

V.    THE SETTLEMENT INCLUDES AN AGREEMENT TO PAY
PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND
EXPENSES .................................................................................... 9

     A.    Negotiated Attorneys' Fees Are Favored by Courts............................ 9

     B.    Plaintiffs' Counsel Are Entitled to Attorneys' Fees and
Expenses Because Their Efforts Conferred a Substantial Benefit
on Shell and Its Shareholders............................................. 11

VI.   THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS
THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS
SUPPORTED BY COUNSEL ....................................................... 13

VII.  CONCLUSION ............................................................................. 14

## TABLE OF AUTHORITIES

**Page**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975) ....................................................................11

*Armstrong v. Bd. of Sch. Dirs.,*
    616 F.2d 305 (7th Cir. 1980) ........................................................13

*Bell Atl. Corp. v. Bolger,*
    2 F.3d 1304 (3d Cir. 1993) .......................................................4, 5

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ....................................................................11

*Bryan v. Pittsburg Plate Glass Co.,*
    494 F.2d 799 (3d Cir. 1974) ..........................................................4

*Cooper v. Casey,*
    97 F.3d 914 (7th Cir. 1996) ........................................................10

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U.S. 326 (1980) ....................................................................10

*Evans v. Jeff D.,*
    475 U.S. 717 (1986) ....................................................................10

*Fisher Bros. v. Phelps Dodge Indus., Inc.,*
    604 F. Supp. 446 (E.D. Pa. 1985) ................................................4

*Gaskill v. Gordon,*
    160 F.3d 361 (7th Cir. 1998) ......................................................10

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) .......................................................4, 7

*Granada Invs., Inc. v. DWG Corp.,*
    823 F. Supp. 448 (N.D. Ohio 1993) .............................................7

Page

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ........................................................................5

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................9, 10

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002) ......................................................................8

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .................................................................10, 11

*In re Cont'l Ill. Sec. Litig.*,
    985 F.2d 867 (7th Cir. 1993) .......................................................................10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..........................................................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ..........................................................................3

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) .........................................................13

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) .....................................................................6

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ......................................................................6, 7

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ....................................................................................12

*Shlensky v. Dorsey*,
    574 F.2d 131 (3d Cir. 1978) ......................................................................3, 4

**Page**

*Stoetzner v. United States Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ........................................................................8

*Walsh v. Great Atl. & Pac. Tea Co.*,
    96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983) ...........................4

*Walsh v. Great Atl. & Pac. Tea Co.*,
    726 F.2d 956 (3d Cir. 1983) .....................................................................13

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) .................................................................................3

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) .....................................................................6

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23.1 ..............................................................................................3, 8

**SECONDARY AUTHORITIES**

Ralph C. Ferrara, Kevin T. Abikoff, Laura Leedy Gansler,
*Shareholder Derivative Litigation: Besieging the Board*
    §14.06 ....................................................................................................12

## I.   INTRODUCTION

Plaintiffs, through their counsel, submit this memorandum in support of approval of the settlement of this shareholder's derivative action ("Action").  The terms of the settlement are set forth in the Stipulation of Settlement dated as of July 22, 2005 ("Settlement Agreement").

As a direct result of this settlement, Royal Dutch Shell, successor to Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, plc, collectively referred to herein as "Shell", will implement comprehensive corporate governance changes for the benefit of Shell and its shareholders.  The agreed upon changes are designed to prevent a recurrence of the alleged wrongdoing that resulted in dissemination of false proved oil and gas reserves.  Plaintiffs and Plaintiffs' Counsel believe this settlement is an excellent resolution of the disputed issues because it will cause the institution of important corporate governance measures – the relief Plaintiffs sought in their complaint – and will make Shell an exemplar for strong corporate governance.

The settlement before the Court is the result of arm's length and hard-fought negotiations, is eminently fair and reasonable to Shell and its shareholders, and deserves the Court's approval.

## II.   FACTUAL BACKGROUND

This Action was brought on behalf of Shell against its Board of Directors, certain top officers, and its outside auditors for causing or permitting Shell to falsify

its proved oil and gas reserves by billions of barrels of oil equivalent over several years, to overstate its future cash flows by over $100 billion, and to falsify its financial statements.

In a series of announcements between January and April 2004, Shell admitted that it had improperly classified as proved oil and gas reserves almost 4.5 billion barrels, reducing its forecasted future cash flow by over $100 billion. Following these announcements, Shell conducted a limited investigation, which pointed to wrongdoing by a small group of individuals, but did not, in our view, adequately address the role of the entire Board of Directors and top level management in the problem.

Plaintiffs' Counsel undertook a detailed investigation of Shell's reserve calculations and accounting practices that resulted in the filing of this Action. *See* paragraph 18 to the Declaration of William S. Lerach and Mary K. Blasy in Support of Final Approval of Derivative Settlement ("Joint Decl."). When the possibility of settlement was raised, Plaintiffs' Counsel, with the assistance of a corporate governance expert, developed corporate governance changes that they believed would address the wrongdoing alleged. Over an approximately ten-month period, the parties met on numerous occasions to negotiate the specifics of Plaintiffs' proposed corporate governance measures. The extensive corporate governance measures finally agreed upon are set forth in Exhibit A to the Settlement Agreement as well as at paragraph 29 of the Joint Declaration. These comprehensive measures address both the specific

misconduct alleged by Plaintiffs in the Action as well as the overall corporate culture that allowed the misconduct to take place.

## III.   SUMMARY OF SETTLEMENT

The primary component of the settlement is the corporate governance plan set forth in Exhibit A of the Settlement Agreement.  In exchange for adoption of these substantial modifications, Plaintiffs will release their claims against the Individual Defendants and nominal defendant Shell.  As part of the settlement, Shell has agreed to pay $9.2 million for Plaintiffs' Counsel's attorneys' fees and expenses and to provide notice of the settlement to its shareholders.  The Court is respectfully referred to the Joint Declaration for a more detailed discussion of the terms of the settlement.

## IV.   THE SETTLEMENT MEETS THE STANDARDS FOR JUDICIAL APPROVAL

Federal Rule of Civil Procedure 23.1 requires judicial approval of the settlement of a shareholders' derivative action.  It is well settled that "[c]ompromises of disputed claims are favored by the courts."  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998).  Settlement spares the litigants the uncertainty, delay and expense of ongoing litigation, trial and appeals and at the same time reduces the burden on judicial resources.

The Third Circuit set forth the criteria for approval of a derivative settlement in *Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978):

- 3 -

> The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest. The adequacy of the recovery provided the corporation by the settlement must be considered in the light of the best possible recovery, of the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation.

*Id.* at 147 (citations omitted); *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1310-14 (3d Cir. 1993) (applying relevant *Girsh* factors to derivative settlement).

Further, in determining whether to approve a settlement, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). The Court may rely on the judgment of experienced counsel and should avoid transforming the settlement hearing into a trial on the merits. *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983); *Bryan v. Pittsburg Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974).

As set forth below, in the Joint Declaration, and in the accompanying Declaration of Robert A.G. Monks in Support of Derivative Settlement ("Monks Decl."), this settlement is an excellent result for Shell and its shareholders and clearly satisfies the standards for approval.

## A.    The Benefit to Shell is Noteworthy

The most important factor in determining the fairness of the settlement is the benefit to be derived by Shell. *Shlensky*, 574 F.2d at 147. The Settlement Agreement

- 4 -

requires Royal Dutch Shell to institute major corporate governance changes with respect to: its Board of Directors; compensation to its directors and senior management; the Annual General Meeting; financial integrity, reporting and controls; auditing and the Audit Committee; insider trading disclosure and controls; and corporate ethics, honesty and legal compliance. These comprehensive governance changes include some very important matters. For example, as a result of this settlement, institutional investors have the unique and unprecedented ability to be involved in the nomination of directors. Moreover, institution of the corporate governance changes agreed upon will result in a more valuable company going forward. As noted in the Monks Declaration good corporate governance will translate to an increase in market capitalization. Monks Decl., ¶¶7-10. Mr. Monks has concluded that the value added to Shell as the result of this settlement is not less than $2.3 billion dollars.

While the corporate governance changes have and will continue to increase Shell's overall value, they are essentially non pecuniary. However, non pecuniary benefits to a corporation frequently support the settlement of a shareholders' derivative lawsuit. *See Bell Atl.*, 2 F.3d at 1311 (derivative settlement upheld when company agreed to implement procedure where sales or marketing programs designed by outside consultants are reviewed by company's senior manager to ensure compliance with applicable laws); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1207 (6th Cir. 1992) (settlement provided for changes in corporate governance aimed

at limiting disbursements to directors and controlling shareholders); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (settlement relief provides for future management responses to tender offers and takeover bids found adequate); *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) (nonmonetary relief adequate settlement).

**B.     Risks in Establishing Liability and Damages are Substantial**

In evaluating the settlement of a shareholders' action, courts have long recognized that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).

Had this case gone forward, Plaintiffs faced serious roadblocks in obtaining personal jurisdiction over the majority of Individual Defendants who resided outside of the United States.  Subject matter jurisdiction was also a difficult issue because at the time of the lawsuit, the two companies were headquartered in The Netherlands and the United Kingdom.  Defendants would therefore maintain that any derivative shareholder action must be governed by Dutch or English law, which, in the case of Dutch law, precludes shareholder suits, and under English law, is severely restricted. Beyond these hurdles, Plaintiffs faced a significant obstacle in showing that their failure to make a demand on the Board of Directors was excused or otherwise futile. This issue is typically fiercely litigated, and Plaintiffs expected Defendants to pursue this avenue in the event Plaintiffs prevailed on the jurisdictional questions.  Finally, Plaintiffs faced the business judgment rule, which presumes that in making a business

- 6 -

decision, actions have been taken on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the company. *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 455 (N.D. Ohio 1993). This presumption can be very difficult for Plaintiffs to overcome.

Assuming that liability was eventually established, it is not at all clear what, if any, damages could be recovered on behalf of Shell. The Fifth Circuit observed:

> [W]here, as here, the derivative suit is largely an attack on past corporate management practices, as well as on some present officers and directors, the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action.

*Maher*, 714 F.2d at 461. In this instance, instead of the risk of failing to obtain a benefit for Shell through continued litigation, the settlement guarantees implementation of sweeping corporate governance changes and billions of dollars in increased market capitalization for Shell.

## C.     The Expense of Continued Litigation Would Be Considerable

The complexity and expense of litigation is a factor militating in favor of the settlement of this Action. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Continuing this litigation would have been extremely complex and costly. Settlement discussions commenced before the parties were required to commit significant

resources. The settlement allows Shell to put these matters to rest and to go forward with substantially improved corporate governance practices.

### D.   The Reaction of Shell Stockholders to the Settlement Supports Approval

The reaction of the stockholders to the settlement strongly favors approval. Notice of the settlement was published in eight major newspapers by Shell on September 1, 2005. To date there has been only one objection to the terms of the settlement. As discussed below, this objection does not complain about the changes obtained by Plaintiffs' Counsel, but seeks individual compensation. The absence of other objections, when Shell has approximately 6.7 billion shares outstanding, is strong evidence that the settlement is fair and should be approved. *See Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when only 10% of the class objected, the response of the class as a whole "strongly favors settlement"). *See also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 124 (D.N.J. 2002).

R. F. Dickinson objects to the settlement on several grounds. First, he objects because he received no previous notice of the proceedings. That is because no prior notice was required. Federal Rule of Civil Procedure 23.1 requires that shareholders be provided with notice of the compromise of a derivative action in such manner as the court directs. Mr. Dickinson also objects because he has not been given an opportunity to be heard by the Court. This objection is his opportunity to be heard

- 8 -

and considered.  Mr. Dickinson complains about Shell's corporate restructuring and concludes that Shell's stock price has been and will continue to be adversely affected. Mr. Dickinson's conclusion is opposite to the views expressed in the Monks Declaration.  The final paragraph of the Monks Declaration concludes "that the Settlement has had a significant impact on the value of Shell. . . .  It is not less than 1% of market value or $2.3 billion dollars."  Monks Decl., ¶21.  Finally, Mr. Dickinson seeks compensation for the financial loss incurred by the action of the Defendants.  Plaintiffs did not seek individual shareholder compensation in this lawsuit; Plaintiffs sought to reform Shell's corporate governance and internal controls. For these reasons, the Court should overrule Mr. Dickinson's objection.

## V.     THE SETTLEMENT INCLUDES AN AGREEMENT TO PAY PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND EXPENSES

### A.     Negotiated Attorneys' Fees Are Favored by Courts

As part of the settlement, Shell has agreed to pay Plaintiffs' Counsel's attorneys' fees and expenses in an aggregate amount of $9.2 million in recognition of the benefits provided to Shell as a result of the prosecution and settlement of this Action. The United States Supreme Court has encouraged a consensual resolution of attorneys' fees *as the ideal toward which litigants should strive*.  In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court said:

> A request for attorney's fees should not result in a second major litigation. ***Ideally, of course, litigants will settle the amount of a fee***.

- 9 -

*Id.* at 437 (emphasis added).  *Accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees).  Moreover, the United States Supreme Court has held that the parties may properly negotiate not only the settlement of a representative action, but also the payment of attorneys' fees.  *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 & n.30 (1986).

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through representative actions, attorneys providing these enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economic for defendants to practice injurious behavior.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980).  It has therefore been urged (most persistently by Chief Judge Richard Posner of the Seventh Circuit) that in defining a "reasonable fee" in representative actions, the law should "mimic the market."  *See, e.g.*, *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set.  The judge, in other words, is trying to mimic the market in legal services.") (citations omitted); *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) ("the reasonable fee is capped at the prevailing market rate for lawyers engaged in the type of litigation in which the fee is being sought"); and *In re Cont'l Ill. Sec. Litig.*, 985 F.2d 867, 868 (7th Cir. 1993).

Here, the Court is not asked to set the fee and it does not need to speculate what fee might have been negotiated. Consistent with the foregoing, the parties negotiated the amount of fees and expenses Shell will pay to Plaintiffs' Counsel for their substantial work for the benefit of Shell and its shareholders. The result is an amount that reflects a compromise reached through arm's-length bargaining by informed parties. It was only after the parties negotiated the other terms of the settlement that the parties addressed the issue of attorneys' fees. Joint Decl., ¶33. Thus, the agreement to pay attorneys' fees and expenses reflects Shell's valuation of the benefits provided to it through the settlement. The virtue of the negotiation of a fee by the adversary parties to the settlement (defendants who must pay the fee versus lawyers who wish to receive it) is that "[m]arkets know market values better than judges do." *Cont'l Ill.*, 962 F.2d at 570. Shell is represented by highly skilled lawyers, and does not need (and has not sought) protection from the Court for the results of its own negotiations regarding the amount of the fees and expenses to be paid.

**B.     Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Expenses Because Their Efforts Conferred a Substantial Benefit on Shell and Its Shareholders**

Under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case that results in benefits being conferred on a corporation are entitled to attorneys' fees and costs. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). Payment of attorneys' fees is appropriate under the substantial benefit rule when the litigation

- 11 -

indirectly confers substantial benefits on an ascertainable group. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). In addition, the substantial benefit obtained for the company need not be monetary:

> In class action litigation, attorneys' fees are normally premised on the existence of a "common fund" awarded to the class from which the plaintiffs' attorneys' fees may be deducted. However, in shareholder derivative actions, monetary recovery is not a required predicate to an award of attorneys' fees as long as a "substantial benefit" of some form has been rendered to the corporation as a result of the plaintiff's attorneys' efforts. The substantial benefit may take the form of remedial corporate action to rectify the alleged wrongdoing . . . .

Ralph C. Ferrara, Kevin T. Abikoff, Laura Leedy Gansler, *Shareholder Derivative Litigation: Besieging the Board* §14.06, at 14-25 to 14-26 (Law Journal Press 2003).

Shell's agreement to pay Plaintiffs' Counsel's attorneys' fees and expenses as part of the settlement is fully supported under the substantial benefit theory because, as a result of the litigation, Shell will implement sweeping and, in some ways, unprecedented corporate governance changes which will result in billions of dollars in increased market capitalization. *See* Monks Decl., ¶21. Shell agreed to pay $9.2 million in fees and expenses based on its perceived value of the settlement. Moreover, the fee negotiations were based upon a knowledgeable analysis of the appropriate fee for the benefits achieved. It is important to recognize that Plaintiffs' Counsel negotiated with their adversaries who saw the efforts of Plaintiffs' Counsel first hand. Further, counsel for Defendants have litigated on the defense side for many years and are aware of fees paid in other actions of a similar nature in which they have been

involved.   Here the fee negotiated between the parties is based on both sides' perceived value of the benefits provided to Shell.  The end result reflects the parties' experience as to what is appropriate and fair.

## VI.    THE SETTLEMENT IS PRESUMPTIVELY FAIR BECAUSE IT IS THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS AND IS SUPPORTED BY COUNSEL

A settlement is considered presumptively fair, where, as here, the parties, through capable counsel, have engaged in arm's-length negotiations.  *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983).  Plaintiffs' Counsel negotiated with Defendants' counsel over the breadth and scope of the corporate governance changes for close to a year.   Joint Decl., ¶6.   There were numerous discussions among highly experienced and capable counsel concerning the specifics of key corporate government measures.

The Court is also entitled to rely heavily on the opinion of competent counsel. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (counsel's assessment of the settlement is "entitled to considerable weight").  Plaintiffs' Counsel have extensive experience in shareholder litigation and their corporate governance consultant specializes in the field of improving corporate governance.  Plaintiffs, Plaintiffs' Counsel and Plaintiffs' corporate governance consultant all believe that the settlement is an outstanding result and in the best interest of Shell and its shareholders.

- 13 -

## VII.   CONCLUSION

This settlement will put Shell at the forefront with respect to corporate governance.   It is a superior result and is extremely beneficial to Shell and its shareholders.   Plaintiffs and Plaintiffs' Counsel respectfully request the Court to approve the settlement as submitted and to overrule the lone objection.

DATED:  October 14, 2005                     GREENBERG DAUBER EPSTEIN
                                                 & TUCKER
                                             RUSSELL S. BURNSIDE
                                             SUMEETA A. GAWANDE

_____
                                       RUSSELL S. BURNSIDE

One Gateway Center, Suite 600
Newark, NJ  07102
Telephone:  973/643-3700
973/643-1218 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
JOY ANN BULL
ARTHUR C. LEAHY
PATRICK W. DANIELS
MARY K. BLASY
X. JAY ALVAREZ
VALERIE L. McLAUGHLIN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

S:\Settlement\Royal Dutch Shell.set\BRF 00025103.doc

- 14 -

## DECLARATION OF SERVICE BY UPS DELIVERY

I, the undersigned, declare:

1.       That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.       That on October 14, 2005, declarant served by UPS, next day delivery, the **MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF DERIVATIVE SETTLEMENT** to the parties listed on the attached Service List.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of October, 2005, at San Diego, California.

YVETTE D. GRAY

ROYAL DUTCH SHELL (SETTLEMENT)
Service List - 10/13/2005   (04-0210S)
Page 1 of  2

**Defendant(s)**

Jonathan R. Tuttle
Debevoise & Plimpton LLP
555 13th Street, N.W., Suite 1100 East
Washington, DC  20004
   202/383-8000
   202/383-8118 (Fax)


Ralph C. Ferrara
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
1875 Connecticut Avenue, N.W., Suite 1200
Washington, DC  20009-5715
   202/986-8000
   202/986-8120 (Fax)


Joseph  Baio
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019-6099
   212/728-8000
   212/728-8111 (Fax)

Peter W. Devereaux
Latham & Watkins LLP
633 West Fifth St., Suite 4000
Los Angeles, CA  90071-2007
   213/485-1234
   213/891-8763 (Fax)


Jeffrey A. Cohen
Robertson, Freilich, Bruno & Cohen, L.L.C.
One Riverside Plaza, 4th Floor
Newark, NJ  07102
   973/848-2100
   973/848-2138 (Fax)


**Plaintiff(s)**

Russell S. Burnside
Greenberg Dauber Epstein & Tucker, A P.C.
One Gateway Center, Suite 600
Newark, NJ  07102
   973/643-3700
   973/643-1218 (Fax)

Arthur C. Leahy
Patrick W. Daniels
Mary K. Blasy
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
   619/231-1058
   619/231-7423 (Fax)

ROYAL DUTCH SHELL (SETTLEMENT)
Service List - 10/13/2005  (04-0210S)
Page 2 of  2

**Objector(s)**

R. F. Dickinson
Objector
8 Turner Road, Taunton, Somerset
TA2 6DR, UK,