NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITE NATIONAL RETIREMENT FUND and PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, derivatively on behalf of ROYAL DUTCH PETROLEUM COMPANIES and THE "SHELL" TRANSPORT AND TRADING COMPANIES, PLC, | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 04-CV-3603 (DMC) |
| Plaintiffs, | |
| v. | |
| PHILIP WATTS, et al. | |
| Defendants, and | |
| THE "SHELL" TRANSPORT AND TRADING COMPANIES, PLC and THE ROYAL DUTCH PETROLEUM COMPANIES, | |
| Nominal Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon motion by Plaintiffs Unite National Retirement Fund, Plumbers and Pipefitters National Pension Fund ("Plaintiffs"), derivatively on behalf of Nominal Defendants Royal Dutch Petroleum Companies and the "Shell" Transport and Trading Companies, PLC ("Nominal Defendants" or "the Companies" or "Shell") for entry of Final Order and Judgment approving the settlement reached by the parties and dismissing with prejudice

Plaintiffs' Amended Verified Shareholders' Derivative Complaint ("Amended Complaint") and the Related Actions[1] in accordance with the terms of the Stipulation of Settlement executed by the parties on July 22, 2005.

I.     **Background**

On June 25, 2004, Plaintiffs filed a Verified Shareholders' Derivative Complaint ("Complaint") on behalf of Nominal Defendants in the Superior Court of New Jersey, Middlesex County. On July 28, 2004, Defendants KPMG LLP and PricewaterhouseCoopers LLP (U.S.) removed this action to the Federal Court. On September 30, 2004, the Amended Complaint was filed. Included in the Amended Complaint were claims against individual Defendants[2] for breach of fiduciary duties or aiding and abetting breaches by others, abuse of their control over the Nominal Defendants, gross mismanagement, constructive fraud and unjust enrichment. (Plaintiffs' Am. Comp.) The Amended Complaint also alleged professional negligence and accounting malpractice against the Auditor Defendants.[3] Id. Plaintiffs sought monetary damages, an accounting by all Defendants of damages they caused to the Companies and "special benefits and unjust enrichment" Defendants obtained, and an order directing the Companies "to take all necessary actions to reform and improve their corporate governance and internal control procedures to comply with Sarbanes-

---

[1]The following are defined as "Related Actions": Soojian v. Jacobs, et al., 04-cv-4160 (filed June 2, 2004 in the District Court for S.D.N.Y); Epstein v. Oxburgh, et al., Case No. 04168560 (filed June 8, 2004 in the Supreme Court of the State of NY in Cty of NY; Staehr v. Van Der Veer, et al., Case No. 04112723 (filed September 2, 2004 in the Supreme Court of the State of NY in the Cty of NY).

[2]Individual Defendants include Philip Watts, Judy Boynton, Walter Van De Vijver, Frank Coopman, Jeroen Van Der Veer, Paul Skinner, Marten Van Der Bergh, Robert J. Routs, Malcolm Brinded, Mark Moody-Stuart, Henry De Ruiter, Luis Giusti, Ronald Oxburgh, Aad Jacobs, Lawrence Ricciardi, Peter Burt, Mary (Nina) Henderson, Teymour Alireza, Eileen Buttle, Peter Job, John Kerr, Wim Kok, Jonkheer Aarnout Loudon, Hubert Markl, Jan Timmer and Robbert Van Der List.

[3]Auditor Defendants include PricewaterhouseCoopers International Limited, PricewaterhouseCoopers LLP (U.S.), PricewaterhouseCoopers LLP (U.K.), KMPG, LLP, KPMG International, and KPMG Accountants NV

Oxley." Id. The Amended Complaint included a list of specific corporate governance policies that the Companies would need to adopt, including policies relating to the "unification of the two Boards" and "a proposal to simplify the corporate structure." Id. The Related Actions were filed in June and September of 2004.

Settlement negotiations amongst the parties began on September 24, 2004. See Nominal Defendants' Memorandum in Support of Derivative Settlement "Def. Supp. Mem." at 7. By April 7, 2005, the parties reached substantial agreement on corporate governance principles and other important terms of the settlement. Def. Supp. Mem. at 8. On July 22, 2005, the parties entered into a Stipulation of Settlement. Id. On August 5, 2005, the Court entered an Order of Preliminary Approval of Settlement, and directed Notice to Shareholders. Id. at 9. The Fairness Hearing for final approval of the Settlement Agreement was held by the Court on October 21, 2005.

## II.    Settlement Agreement

The Settlement Agreement provides that the Companies will adopt, implement and maintain a series of corporate governance principles for the benefit of Shell and its shareholders. (See Declaration of William S. Lerach and Mary K. Blasy in Support of Final Approval of Derivative Settlement ("Joint Decl." at ¶29.) The changes agreed to are designed to prevent a reoccurrence of the alleged wrongdoings that resulted in dissemination of false proved oil and gas reserves. Id. The principles include policies and standards related to board composition and qualifications; board independence; the nomination process; membership and functions of board committees; compensation of directors and senior management; establishment of an Annual General meeting; financial reporting and control, including proved hydrocarbon reserve estimates; Audit Committee composition, qualifications and role; insider trading controls; and corporate ethics and legal

compliance. Id. In exchange for Shell's adoption of the corporate governance principles, Plaintiffs' have agreed to release their claims against the Individual Defendants and Nominal Defendant Shell.

### A. Approval of the Settlement Agreement

Plaintiffs ask this Court to approve the proposed derivative settlement agreement pursuant to Rule 23.1 of the Federal Rules of Civil Procedure.[4] A court asked to accept a proposed settlement agreement must find that the settlement is "fair, adequate, reasonable and proper, and in the best interests of the class and the shareholders." Bell Atlantic Corp. v. Bolger, 2 F.3d 1310, 1317 (3d Cir. 1993). The Third Circuit has advised:

> [t]he principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest. The adequacy of the recovery must be considered in light of the best possible recovery, of the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation.

Shlensky v. Dorsey, 574 F.2d 131, 147(3d Cir. 1978)(citations omitted). Additionally, Circuit jurisprudence suggests district courts apply the following factors when making a fairness determination:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the shareholders to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the derivative action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement agreement in light of the best possible recovery;

---

[4]Federal Rule of Civil Procedure 23.1 states in pertinent part, "[t]he action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholder or members in such manner as the court directs."

> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsch v. Jepson, 521 F.2d 153, 156-57 (3d Cir. 1975) (quotation omitted); see also Shlensky, 574 F.2d at 147. (Girsh factors appropriately applied in settlement of shareholders' derivative suits).

*Benefit to the Companies of the Corporate Governance Plan*

As stated earlier, the most important factor in evaluating the fairness of the settlement agreement is the benefit to the corporation. Shlensky, 574 F.2d at 147. Here, the benefits that will accrue to the Companies are of a non-pecuniary nature. However, "[d]espite the difficulties they pose to measurement, non-pecuniary benefits to the corporation may support a settlement." Bell Atlantic at 1311 (citing series of cases from other circuits where non-monetary derivative relief found adequate to support settlement). This is particularly true when the relief is intended to prevent future harm. Id. In this action, the parties submit that not only will the governance principles prevent future governance failures by ensuring that proved oil reserve estimates meet the required standards, but Plaintiffs' expert, Mr. Monks, opines that the added value to Shell resulting from this settlement agreement is not less than $2.3 billion. See Declaration of Robert A.G. Monks, ¶21. Also, Plaintiffs highlight a unique benefit that will accrue from the implementation of the governance principles: namely, that institutional investors now have the ability to be involved in the nomination of directors. See Plaintiffs' Memorandum of Law in Support of Derivative Settlement "Pl. Supp. Mem." at 5. Finally, the parties submit the principles included as part of the plan will have positive effects on board governance, overall compliance, executive compensation, financial and other reporting, and management efforts at a number of levels within the Company. Def. Supp. Mem. at 16. The benefits outlined by the parties clearly weigh in favor of settlement.

As advised by the Third Circuit, the Court will consider each of the nine <u>Girsch</u> factors in turn.

(1) *The Complexity, Expense and Likely Duration of the Litigation*

The first factor "is intended to capture the probable costs, on both time and money, of continued litigation." <u>In re Lucent Technologies, Inc., Sec. Litig.</u>, 307 F. Supp. 2d 633, 642 (D.N.J. 2004) (quotation omitted). Derivative suits are by their nature undeniably complex, and this case is no exception. If the parties determined to go forward with litigation in this action, they would face significant legal hurdles. In particular, Plaintiffs point out that they would have struggled with personal jurisdiction matters, restrictive choice of law issues, and having to overcome the business judgment rule. Pl. Sup Mem. at 6. The Court assumes that should this litigation have ensued, the parties would have engaged in a significant amount of discovery, pre-trial motions, an extensive trial followed by post-trial motions and an appeal, all of which would be at great expense. Also, these circumstances could extend the litigation many months or years. Thus, the complexity of the case, combined with the potential expense and longer duration of litigation cause this factor to weigh heavily in favor of approval.

(2) *The Reaction of the Shareholders to the Settlement*

Notice of the settlement was published in eight major newspapers by Shell on September 1, 2005. Only one objection was received to the settlement.[5] Plaintiffs determined that this *pro se* objection misunderstood the nature and terms of the Settlement and was deemed to be without merit. The Court has reviewed this objection and agrees that it misunderstood the proposed settlement. As

---

[5] The sole objection filed with the Court was by R.F. Dickinson, Esq., a British lawyer.

such, this factor weighs in favor of approval.

(3) *The Stage of the Proceedings and the Amount of Discovery Completed*

Next, "[p]arties should have an 'adequate appreciation' of the merits in settling a case." Id. at 644 (quotation omitted). This factor "captures the degree of case development that...counsel have accomplished prior to settlement." In re Cendant, 264 F.3d. 201, 235 (3d. Cir 2001). This litigation is still in the pre-trial stage and formal discovery has not yet commenced. However, in support of their efforts, Plaintiffs' Counsel submit that before the filing of the initial Complaint, they undertook extensive investigation of Shell's practices. Joint Decl. at ¶18. Such investigation included "a review of the history of its reserve calculations and accounting practices, compliance with the U.S. Generally Accepted Accounting Principles and securities law, including the Sarbanes-Oxley Act of 2002." Id. Also, the investigation required "extensive review and analysis of approximately a decade worth of Shell's SEC filings, securities analysts' reports and advisories about Shell, press releases issued by Shell and articles and media reports about Shell." Id. In addition, Plaintiffs' Counsel undertook to familiarize itself with applicable Dutch and English law. Id. It is further asserted that "Plaintiffs Counsel conferred with an expert in the field of executive compensation and corporate governance who assisted Plaintiffs' Counsel in drafting the initial complaint and designing and negotiating the corporate governance changes that were eventually agreed upon." Id. at ¶20. In light of the above, it is clear that a significant amount of informal discovery and investigation was undertaken by Plaintiffs' counsel. As such, despite the absence of formal discovery and extended motion practice, this Court finds that the parties fully appreciated the merits of this case. Thus, this factor weighs in favor of approval.

(4)(5)   *The Risks of Establishing Liability and Damages*

In considering the fourth and fifth factors, a court should "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." Girsch at 643.  Here, Plaintiffs face the "difficulties inherent in derivative litigation as well as significant procedural and substantive obstacles."  Def. Supp. Mem. at 18.  Plaintiffs submit that they would have faced challenges on personal jurisdiction grounds with regard to the Companies and the Individual Defendants, and on subject matter jurisdiction grounds because the Companies are located in the Netherlands and the United Kingdom.  Pl. Supp. Mem at 6.  Furthermore, Plaintiffs would have to demonstrate sufficient compliance with the demand requirement of Fed. R. Civ. P. 23.1, an issue likely to be heavily contested.  Id.  Finally, Plaintiffs submit that in order to succeed they would have to overcome the business judgment rule or its equivalent protections under the laws of the Netherlands or the United Kingdom.  Id. at 7.

As to the question of damages, Plaintiffs submit that even if "liability was eventually established, it is not at all clear what, if any, damages could be recovered on behalf of Shell."  Id. On the other hand, the Settlement Agreement guarantees a benefit to Shell.  Thus, the risks of establishing liability and damages weigh in favor of approval.

(6)   *The Risks of Maintaining the Derivative Action Through the Trial*

The sixth Girsh factor is typically used to evaluate the risk of maintaining class certification in a class action.  A derivative action does not present the same concern.  As such, this factor neither weighs in favor of nor against approval.

(7)  *The Ability of the Defendants to Withstand a Greater Judgment*

The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement." Id. at 336. Because the settlement agreement provides relief of a non-pecuniary nature, the Court is not in a position to say whether Defendants could withstand a greater judgment. As a result, this factor does not weigh against or in favor of approval.

> (8)(9)  *The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of Litigation Risks*

Finally, for the eighth and ninth factors, a court should consider how "the present value of the damages the plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing. . .compare[] with the amount of the proposed settlement." In re Lucent, 307 F. Supp. 2d at 647. The best possible recovery, while arguably more than the settlement, is tempered by the risks of further litigation. The settlement provides immediate and substantial benefits for all parties and represents a better option than little or no recovery at all. Thus, the reasonableness of the settlement weighs in favor of approval.

### B.  **Summary of Factors**

In sum, the Court finds that the balance of factors weigh in favor of approval. The Court further finds that the settlement is fair, adequate, reasonable and proper, and in the best interests of the class and the shareholders. Accordingly, the Court approves the settlement agreement.

### IV.  **Attorneys' Fees**

Plaintiffs' Counsel submit that Shell has agreed to pay attorneys' fees and expenses in the amount of $9.2 million. See Joint Decl. at ¶41. Typically, in determining approval of attorneys' fees

in large settlements, a court will award fees based on a percentage of recovery of the common fund awarded to the plaintiffs. Here, however, the recovery is of a non-pecuniary nature and is not easily translated into dollar terms. Nevertheless, "[a]ttorneys' fees may be awarded even though the benefit conferred is purely non-pecuniary in nature." Merola v. Atlantic Richfield Co., 515 F.2d 165, 169-70 (3d. Cir. 1975) (citing Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 393 (1970)). Instead of using a percentage of recovery method, payment of attorneys' fees is determined pursuant to the substantial benefit rule. Mills at 393.

For a benefit to be considered substantial, it must be more than technical in consequence, and must be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or would affect the enjoyment or protection of an essential right to the shareholder's interest." See Mills at 396. Rewarding fees for purely speculative benefits could serve to encourage strike suits. See Schechtman v. Wolfson, 244 F.2d 537 (2d Cir. 1957).

Here, Plaintiffs submit that Shell's agreement to pay attorneys fees is warranted under the substantial benefit theory. Plaintiffs assert that the settlement agreement will lead to "sweeping and unprecedented corporate governance changes which will result in billions of dollars of increased market capitalization." Pl. Sup Mem. at 12. Plaintiffs note that Shell agreed to pay $9.2 million in fees and expenses based on its perceived value of the settlement, that the fee negotiations were based upon a knowledgeable analysis of the appropriate fee for the benefits achieved, and that the end result reflects the parties' experience as to what is appropriate and fair. Id.

The Court agrees with Plaintiffs' Counsel that the agreed upon attorneys' fees are justified

in this case. Plaintiffs' supporting papers are convincing as to the great benefit conferred upon Shell as a result of the new corporate governance principles provided for in the settlement agreement, and show that the principles will serve to prevent and protect Shell from the reoccurrence of certain alleged wrongdoings. Furthermore, it is clear that counsel put forth great effort in its investigation and devoted significant resources and time to achieving such a favorable settlement. As such, the Court approves the amount of attorneys fees.

V.      Conclusion

For the reasons expressed above, Plaintiffs' Motion for Final Approval of the Settlement Agreement is **granted.** The Settlement Agreement is hereby **approved**. An appropriate Order accompanies this Opinion. The Court is contemporaneously entering the accompanying Order Approving Derivative Settlement and Order of Final Judgment. Accordingly, this action is **dismissed with prejudice**.

          S/ Dennis M. Cavanaugh
          DENNIS M. CAVANAUGH, U.S.D.J.

Date:        October 27, 2005
Original:    Clerk's Office
Cc:          All Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File